(No. 14984.—Decree affirmed.)

MOLLIE E. BURGESS, Appellee, *vs.* CURTIS L. BURGESS *et al.*
Appellants.

*Opinion filed December 19, 1922.*

1. SPECIFIC PERFORMANCE—*when equity will enforce oral contract to convey.* An oral contract to convey land to the complainant if he will live upon it, improve it with lasting improvements and pay the taxes until the grantor's death, and which is performed by the complainant on his part, will be specifically enforced by a court of equity; but the contract must be established by proof that is clear, definite and unequivocal.

2. SAME—*relation of parties is considered in case of an alleged oral promise of father to convey to child.* In a suit for the specific performance of an alleged oral contract by a father to convey land to a child the evidence is to be considered in view of the relation between the parties, which may indicate possession either under a contract or permissively as a benefit to the child.

3. SAME—*an alleged oral contract for conveyance may be established after death of both parties.* An alleged oral agreement of a father to convey land to his son if he will live upon and improve it may be established after the death of both parties to the contract by declarations of the parties together with evidence of acts and conduct by them showing that the agreement was in fact made; and where the agreement was to deed the land after the father's death, evidence of his refusal to make the conveyance in his lifetime is not inconsistent with the alleged contract.

4. SAME—*when widow of intended grantee is entitled to specific performance of alleged oral contract for conveyance.* The widow of the intended grantee in an alleged oral contract for a conveyance from a father to his son if the son will live upon and improve the land until the father's death will be entitled to specific performance of the contract, where the contract is proved and there has been complete performance by the son, and by his widow after his death, up to the death of the father, and where there is evidence that the father, when the son died, promised to carry out the contract by giving a deed to the widow.

APPEAL from the Circuit Court of Henry county; the Hon. WILLIAM T. CHURCH, Judge, presiding.

LAWRENCE C. JOHNSON, and ALBERT E. BERGLAND, for appellants.

EDWARD S. STICKNEY, and DYER & DYER, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The appellee, Mollie E. Burgess, filed her bill in equity in the circuit court of Henry county against the appellants, Curtis L. Burgess and William E. Burgess, in their own right as heirs-at-law of Thomas Burgess, deceased, and as executors of his last will and testament, praying for the specific performance of an alleged oral contract for the conveyance of an 80-acre tract of land made by Thomas Burgess to his son Luther, the deceased husband of appellee. The bill was answered with a denial that the contract was made, or if made, that there was such performance by Luther as would take it out of the Statute of Frauds. The issues were referred to the master in chancery to take the evidence and report his conclusions of law and fact. The master took the evidence and returned it to the court with his findings in favor of complainant as to each of the issues. The cause was heard by the chancellor on exceptions to the report, which were overruled, and a decree was entered requiring the defendants to execute a deed to the complainant, or in case of their default, the master in chancery should execute such deed. An appeal was allowed to the defendants and perfected.

The questions to be answered are whether the alleged contract was proved and whether there was such performance as would take it out of the Statute of Frauds, and the question of law whether the obligation of Thomas Burgess ceased at the death of Luther and the contract then came to an end.

Thomas Burgess owned three 80-acre farms, and had put his sons Curtis L. and William E. Burgess, the defend-

ants, each in the possession of a farm. He lived on the farm in question here, with his wife, his son Luther, and his daughter, Lena. On November 20, 1894, Luther married the complainant, and Thomas, with his wife and daughter, moved from the farm to a home in Woodhull and turned over the possession of the farm to Luther. The contract alleged was that Thomas then promised Luther that he would give him that farm if Luther and his wife would occupy it, pay the taxes and improve the farm for their home, and that he would deed it to him so that he would have the title at the death of Thomas. If Thomas made the oral promise alleged to convey the farm to Luther so that he would have the title after the death of Thomas if Luther would live upon it, improve it with lasting and permanent improvements and pay the taxes, and Luther took possession of the land and performed the contract on his part, equity will enforce a specific performance of the contract. (*Kurtz* v. *Hibner,* 55 Ill. 514; *Wood* v. *Thornly,* 58 id. 464; *Langston* v. *Bates,* 84 id. 524; *Bohanan* v. *Bohanan,* 96 id. 591; *Warren* v. *Warren,* 105 id. 568; *Smith* v. *Yocum,* 110 id. 142; *White* v. *White,* 231 id. 298; *Harlan* v. *Harlan,* 273 id. 155; *Fletcher* v. *Osborn,* 282 id. 143; *Aldrich* v. *Aldrich,* 287 id. 213; *Mayo* v. *Mayo,* 302 id. 584.) The contract must be established by proof which is clear, definite and unequivocal, and unless a court of equity is well satisfied of the existence of the contract and the substantial justice of the demand relief will be denied, and where the contract is by a father to convey land to a child, the evidence is to be considered in view of the relation between the parties, which might indicate possession either under a contract or permissively as a benefit to the child. *Shovers* v. *Warrick,* 152 Ill. 355; *Geer* v. *Goudy,* 174 id. 514; *Seitman* v. *Seitman,* 204 id. 504; *Standard* v. *Standard,* 223 id. 255; *Ranson* v. *Ranson,* 233 id. 369; *Daly* v. *Kohn,* 234 id. 259.

There can be no question but that there was some sort of agreement or understanding between Thomas Burgess and Luther when Thomas left the farm with his family and moved to Woodhull and Luther took possession and commenced making improvements. That the agreement then made was as claimed by the complainant, both parties being dead, could be proved by declarations of the parties together with evidence of acts and conduct by them showing that the agreement was, in fact, made. (*Willis* v. *Zorger,* 258 Ill. 574; *Kane* v. *Hudson,* 273 id. 350; *Mayo* v. *Mayo, supra; Aldrich* v. *Aldrich, supra.*) It was proved by a number of witnesses that Thomas told them that the farm was Luther's; that he had given the place to Luther and he could improve it as he saw fit. He had three sons and a daughter, Lena, and said that he had a farm for each of his sons and had bought one for Lena in Knox county. Luther died on May 26, 1908, and there was evidence that Thomas recognized the contract when Luther was on his death-bed and then promised that he would do by complainant as he had promised to do for Luther; that he told Luther not to worry; that he would give Mollie the deed. There was evidence for the defendants that Luther wanted his father to give him a deed in the father's lifetime and the father refused. He said that he had not given a deed to any of the children; that he had not given Will or Curtis a deed and Lena had no land; that the property was his and he was going to keep it as long as he lived. But his refusal to make a conveyance effective in his lifetime was not inconsistent with the contract alleged, by which Luther was to have the title after the death of his father.

On the question whether there was performance by Luther, the evidence was that he took possession, re-built and enlarged a barn, improved the dwelling house, made other improvements of a permanent character and set out an orchard. Some of the improvements were not of great importance, and at the time of the trial, long after the death

of Luther, they were not all in the best condition. Taxes were paid from the year 1898 down to the year 1920, when the bill was filed, either by Luther in his lifetime or out of his estate or by the complainant. Luther had possession of the farm for over thirteen years and made valuable and lasting improvements, paid the taxes and insured the buildings. By his will he gave his estate, real and personal, to the complainant, including the property then possessed by him or that in which he might have an equity or in which he might have an inheritance as heir, and appointed her executrix. Lena died in September, 1909. Thomas lived after the death of Luther until 1919, and left a will dated February 26, 1913, by which, after making bequests, including $2000 to the complainant, he devised the rest and residue of his estate in general terms, without describing any real estate, in equal parts to his two surviving sons, William and Curtis, who were appointed executors. The contract was proved and such performance as took it out of the Statute of Frauds. There was testimony that the complainant, after the death of her husband, said that she had no interest in the place now that Luther was dead and that she would not get it; but, of course, that did not affect the contract or her right, and was only her opinion of the law expressed in times of discouragement.

The final question is whether the contract ceased to have any force at the death of Luther. There was not only the evidence already alluded to that Thomas Burgess promised, at the death of Luther, to carry out the contract by giving the complainant a deed, but there was no personal service to be rendered by Luther and there is no rule respecting personal service which applies. Complainant performed the contract after her husband's death and is entitled to the benefit of it.

The decree is affirmed.

*Decree affirmed.*