FIRST DIVISION

No. 1-10-0090

| | | |
|---|---|---|
| JUDITH BAEZ, Individually and as Special Administrator of the Estate of Rafael Marquez, Deceased, | ) ) ) | Appeal from the Circuit Court of Cook County |
| Plaintiff-Appellee, | ) ) | |
| v. | ) | No. 08 L 010215 |
| | ) | |
| GARRETT ROSENBERG, | ) ) | |
| Defendant | ) ) | |
| (Jesenia Laureano, Guardian of the Estate of Destiny Alexia Marquez, a Minor, | ) ) | Honorable |
| | ) | Ronald S. Davis, |
| Petitioner-Appellant). | ) | Judge Presiding. |

JUSTICE LAMPKIN delivered the judgment of the court, with opinion.
Presiding Justice Hall and Justice Rochford concurred in the judgment and opinion.

## O P I N I O N

A settlement was reached in a wrongful death and survival suit brought by the deceased's estate against the other driver involved in the collision. The circuit court (1) distributed the settlement proceeds among the deceased's parents and minor child; (2) awarded funeral and burial expenses to reimburse expenditures made by the deceased's parents; (3) awarded attorney fees and costs to both the special administrator's and the child's attorneys; and (4) denied the

motion filed on behalf of the child to substitute her mother as the special administrator instead of the deceased's mother. An appeal was filed on behalf of the child.

We hold that: (1) only the child of the deceased, not his parents, was his "next of kin" and entitled to the proceeds from the settlement of the wrongful death claim; (2) the parents were not entitled under the wrongful death claim to reimbursement for the funeral and burial expenses they advanced to the deceased's estate; (3) the attorney for the special administrator was not entitled to attorney fees and costs pursuant to a contract, the common fund doctrine, or equitable principles; and (4) the circuit court must review on remand the motion to substitute the special administrator.

Accordingly, we reverse the circuit court's awards to the deceased's parents of wrongful death settlement proceeds and funeral and burial expenses. We also reverse the circuit court's award of fees and costs to the special administrator's attorney. Further, we reverse and remand for review the court's denial of the motion to substitute the special administrator.

## I. BACKGROUND

This dispute arose after the July 1, 2008 death of Rafael Marquez, who was involved in a collision with a car while he was riding his motorcycle. At the time of his death, Rafael was survived by his parents, Judith Baez and Mario Marquez, and a brother. In addition, Jesenia Laureano claimed that she was pregnant with Rafael's child. Baez retained Regina P. Etherton & Associates, LLC (Etherton), as counsel. Laureano retained Heller & Richmond, Ltd. (Richmond), as counsel.

2

On September 5, 2008, the insurance carrier for the car that struck Rafael offered the $100,000 policy limit to both counsel "to extinguish all claims." The insurance carrier needed court approval of the settlement with documentation that the court had addressed the claims presented by both attorneys and specific instructions as to how and to whom to issue the checks. Once that documentation was received, the insurance carrier would forward the appropriate releases.

On September 15, 2008, Baez filed a petition moving the court to appoint her as special administrator of Rafael's estate pursuant to the Wrongful Death Act (740 ILCS 180/1 *et seq.* (West 2008)) and the Code of Civil Procedure (735 ILCS 5/2-1008 (West 2008)). The petition stated that Rafael's death created causes of action for his next of kin "for, *inter alia*, wrongful death and pecuniary losses under the Illinois Wrongful Death Act [citation]; for physical injury, pain, suffering and medical and other expenses under the Illinois Survival Act, 755 ILCS 5/27-6 (West 2008); and under other statutes and laws in such cases made and provided." The petition also stated that those causes of action were the only relevant assets of the estate and a petition for letters of office had not been filed for the estate. That same day, the circuit court appointed Baez as special administrator "for the purpose of prosecuting each individual cause of action for damages on the behalf of the Estate pursuant to the Illinois Wrongful Death Act [citation], the Illinois Survival Act [citation], and other statutes and laws in such cases made and provided." Also that same day, Baez filed a complaint for damages on behalf of Rafael's estate, asserting a wrongful death action (count I) and a survival action (count II).

On September 17, 2008, Baez filed a petition to distribute settlement funds pursuant to section 2 of the Wrongful Death Act (740 ILCS 180/2 (West 2008)). The petition asserted that the $100,000 settlement proceeds should be distributed to Rafael's mother, father and brother in proportions determined by the court. The petition stated that Laureano claimed to be carrying Rafael's unborn child, but Rafael's family challenged the paternity of that child and did not believe any money should be distributed to the child.

On November 23, 2008, Laureano gave birth to Destiny Marquez. In January 2009, Laureano filed a petition seeking DNA testing to determine whether Rafael was Destiny's father. The court ordered such testing, and a DNA test report dated February 13, 2009, indicated a 99.9995% probability that Baez and Mario Marquez were Destiny's biological grandparents. On May 12, 2009, the court noted that the parties agreed the test results indicated that Rafael was Destiny's biological parent.

The circuit court held an evidentiary hearing and then, on August 14, 2009, issued its decision on the petition to approve the settlement, determine the proper dependents, and distribute the settlement funds. Transcripts of those hearings were not included in the record on review. The circuit court found that the $100,000 settlement was fair, adjudged Rafael to be Destiny's father, and determined that Rafael's mother Baez, father Mario Marquez, and child Destiny were entitled to distributions. The court determined that Baez and Mario Marquez were dependent on Rafael for support, whereas Destiny was only partially dependent on him for support. The court awarded $13,713.26 to Baez and $13,713.26 to Mario Marquez. In addition, they should "receive $13,041 to reimburse for funeral expenses which they expended." The

4

court also awarded Etherton $22,222 in attorney fees and $762.96 for expenses. Further, the court awarded Destiny $27,427.52. Finally, the court awarded Richmond $8,200 for attorney fees and $920 for costs.

Laureano filed a motion for reconsideration, which argued that: (1) the award to Rafael's parents was contrary to the Wrongful Death Act because they were not classified as his next of kin where he was survived by his child; (2) the funeral expenses paid by Rafael's parents were not recoverable under the Wrongful Death Act; (3) the award of attorney fees to Etherton was error; and (4) the allocation of attorney fees to Richmond was inequitable. Laureano also filed a motion to substitute administrators. Specifically, she asserted that special administrator Baez had a conflict of interest with Destiny, who was Rafael's sole beneficiary under the Wrongful Death Act, and Laureano should be appointed special administrator instead of Baez.

In response, Baez objected to Laureano's motion for reconsideration and motion to substitute administrators. Baez also moved the court to assess attorney fees against Laureano and Richmond.

The circuit court denied Baez's motion to assess attorney fees; denied Laureano's motion for reconsideration; and denied Laureano's motion to substitute administrators. A timely appeal was filed on behalf of the estate of Destiny Marquez, a minor, by her mother, petitioner Laureano.

## II. ANALYSIS

### A. Next of Kin

Petitioner Laureano challenges the award of settlement proceeds to Rafael's parents,

arguing that her daughter Destiny is the sole beneficiary of Rafael's estate under the Wrongful Death Act. The meaning of a statute is an issue of law that we decide *de novo*. *Miller v. Kramarczyk*, 306 Ill. App. 3d 731, 732 (1999).

The Wrongful Death Act created a statutory cause of action that affords a remedy limited to a defined class of individuals upon the wrongful death of another. *Porter v. Klein Construction Co.*, 162 Ill. App. 3d 1, 3 (1987). The Wrongful Death Act must be strictly construed and not rewritten to comport with a court's idea of orderliness and public policy. *Miller*, 306 Ill. App. 3d at 732; *Forthenberry v. Franciscan Sisters Health Care Corp.*, 156 Ill. App. 3d 634, 637 (1987). The Wrongful Death Act provides:

> "Every such action shall be brought by and in the names of the personal representatives of such deceased person, and, except as otherwise hereinafter provided, the amount recovered in every such action shall be for the exclusive benefit of the surviving spouse and next of kin of such deceased person." 740 ILCS 180/2 (West 2008).

The proceeds of a successful wrongful death suit are apportioned as follows:

> "The amount recovered in any such action shall be distributed by the court in which the cause is heard or, in the case of an agreed settlement, by the circuit court, to each of the surviving spouse and next of kin of such deceased person in the proportion, as determined by the court, that the percentage of dependency of each such person upon the deceased person bears to the sum of the percentages of dependency of all such persons upon the deceased person." 740 ILCS 180/2

(West 2008).

The Wrongful Death Act does not provide a definition for the statutory phrase "next of kin," but our supreme court has held that the phrase is defined as the " 'definite blood relatives or a definite class of blood relatives or kinsmen in existence at the time of the death of the deceased who would take his personal property in case he died intestate.' " *Morris v. William L. Dawson Nursing Center, Inc.*, 187 Ill. 2d 494, 497 (1999) (quoting *Wilcox v. Bierd*, 330 Ill. 571, 582 (1928), *overruled on other grounds*, *McDaniel v. Bullard*, 34 Ill. 2d 487 (1966)). Consequently, Illinois courts look to the laws of intestacy to determine a decedent's next of kin within the meaning of the Wrongful Death Act.

Here, Rafael was survived by his parents, a brother, and a child. Pursuant to section 2-1(b) of the Illinois Probate Act of 1975 (Probate Act) (755 ILCS 5/2-1(b) (West 2008)), when a decedent leaves no surviving spouse but is survived by a descendant, "the entire estate" is distributed to the decedent's descendants *per stirpes*. A posthumous child of a decedent receives the same share of an estate as if the child had been born in the decedent's lifetime. 755 ILCS 5/2-3 (West 2008). Moreover, if "after his death a decedent has been adjudged to be the father of a child born out of wedlock, that person is heir of his father." 755 ILCS 5/2-2 (West 2008). Under the laws of intestate succession, Rafael's child Destiny would share in Rafael's estate to the exclusion of his parents. *Forthenberry*, 156 Ill. App. 3d at 637; *Rallo v. Crossroads Clinic, Inc.*, 206 Ill. App. 3d 676, 683 (1990). Consequently, Destiny alone is Rafael's next of kin within the meaning of the Wrongful Death Act, and she alone is entitled to a share of the proceeds of the wrongful death suit.

The parents argue that the 1955 amendments to section 2 of the Wrongful Death Act modified the procedure for distribution of the proceeds of a wrongful death suit so that it is no longer based on the laws of intestacy but rather upon actual dependency of the surviving spouse and next of kin as determined by the court. Our supreme court, however, has rejected this same argument, noting that while the legislature "abandoned the laws of intestate succession as the basis for determining how wrongful death proceeds are distributed among the class of eligible beneficiaries, it manifestly retained the laws of intestacy as the means for identifying the members of that class." *Morris*, 187 Ill. 2d at 499. See also *Dotson v. Sears, Roebuck & Co.*, 157 Ill. App. 3d 1036, 1047-48 (1987).

The circuit court erred when it included Rafael's parents as beneficiaries of his wrongful death settlement because, pursuant to the Wrongful Death Act, Destiny was Rafael's sole surviving next of kin. Consequently, we reverse the circuit court's award of $13,713.26 to Baez and $13,713.26 to Mario Marquez and remand this matter so that those amounts are distributed to Destiny.

## B. Funeral and Burial Expenses

Petitioner Laureano challenges the award of funeral and burial expenses to Rafael's parents, contending there was no legal basis for the circuit court to charge those costs to Rafael's child. Baez responds that the circuit court properly reimbursed them with funds from the wrongful death settlement under the family-expenses provision of the Rights of Married Persons Act (750 ILCS 65/15 (West 2008)).

1-10-0090

We find that the Wrongful Death Act and the Rights of Married Persons Act do not provide a legal basis to reimburse Rafael's parents for the estate's funeral and burial expenses. Moreover, the settlement proceeds in this case cannot be awarded to the estate to reimburse the parents for the estate's funeral and burial expenses. Consequently, we reverse the $13,041 award to Baez and Mario Marquez and remand this matter with instructions to distribute that amount to Destiny.

Because Rafael left Destiny as his next of kin, the administrator cannot recover funeral expenses under the Wrongful Death Act, which gives an administrator a right to sue for such expenses only when no spouse or next of kin survives. 740 ILCS 180/2(c) (West 2008); *Chidester v. Cagwin*, 76 Ill. App. 2d 477, 484 (1966); *Eggimann v. Wise*, 41 Ill. App. 2d 471, 487 (1963).

Furthermore, the Rights of Married Persons Act does not authorize the reimbursement of funeral expenses here. The purpose of the family-expenses provision of the Rights of Married Persons Act, which makes a husband and wife jointly liable for all family expenses, regardless of which spouse incurs expenses, is to protect creditors. *Proctor Hospital v. Taylor*, 279 Ill. App. 3d 624, 627 (1996). Funeral expenses are considered "family expenses" (*Fortner v. Norris*, 19 Ill. App. 2d 212, 215-16 (1958)), and parents are liable for the funeral expenses incurred by them on behalf of a minor child (*Graul v. Adrian*, 49 Ill. App. 2d 101, 105 (1964)). However, once a child reaches the age of majority, the parents' responsibility to support the child ceases, and they may no longer be held liable for the child's funeral expenses under the Rights of Married Persons Act. See *Proctor Hospital*, 279 Ill. App. 3d at 628. Because Rafael was not a minor child, the

9

Rights of Married Persons Act does not provide a legal basis to reimburse his parents for his funeral expenses.

Illinois recognizes a common-law cause of action that can be brought against a tortfeasor either by the decedent's estate or the surviving spouse for funeral bills incurred as a result of the defendant's tortious conduct. *Saunders v. Schultz*, 20 Ill. 2d 301, 309-10 (1960) (permitting a widow to maintain an independent action for the medical and funeral expenses incurred as a result of the wrongful death of her husband). Moreover, the record indicates that Baez sought and received the appointment of special administrator to enable her to prosecute, on behalf of the estate and in addition to the cause of action for pecuniary losses under the Wrongful Death Act, causes of action for physical injury, pain and suffering, and medical and other expenses under the Survival Act and other statutes and laws. The circuit court, however, could not empower Baez in this case to prosecute other causes of action in addition to the wrongful death claim.

Instead of filing a petition for letters of administration in the probate court, Baez sought the appointment of special administrator of Rafael's estate. The Wrongful Death Act, in regard to the appointment of a special administrator, reads:

> "In the event that the *only asset of the deceased estate is a cause of*
> *action arising under this Act*, and no petition for letters of office
> for his or her estate has been filed, the court *** may appoint a
> special administrator for the deceased party *for the purpose of*
> *prosecuting* or defending *the action*." (Emphasis added.) 740 ILCS
> 180/2.1 (West 2008).

10

By the very terms of the statute upon which Baez sought appointment as special administrator, the circuit court was not authorized to empower her to prosecute other causes of action in addition to the wrongful death cause of action. Whereas executors and administrators appointed under the Probate Act are given powers to collect and manages assets, pay claims and make distributions (*Lindsey v. Special Administrator of the Estate of Phillips*, 219 Ill. App. 3d 372, 376 (1991)), the powers and duties of a special administrator are strictly limited to those prescribed by the wrongful death statute (*Kubian v. Alexian Brothers Medical Center*, 272 Ill. App. 3d 246, 250 (1995)).

We note that when a person entitled to bring an action dies before the action is commenced and the cause of action survives, section 13-209 of the Code of Civil Procedure authorizes the circuit court, where no petition for letters of office for the decedent's estate has been filed, to appoint a special representative for the purpose of prosecuting the cause of action. 735 ILCS 5/13-209 (West 2008). Although Baez incorrectly cited section 2-1008 of the Code of Civil Procedure (735 ILCS 5/2-1008(b)(1) (West 2008)) in her petition for appointment, she essentially sought and received the section 13-209 special representative appointment that would have enabled her to prosecute a cause of action for physical injury, pain and suffering, and medical and other expenses without the issuance of letters of administration. Nevertheless, the plain terms of section 2.1 of the Wrongful Death Act do not permit, in situations involving the absence of letters of administration, a special administrator to prosecute a wrongful death claim with other causes of action. 740 ILCS 180/2.1 (West 2008).

11

Where Baez's authority to prosecute a cause of action was limited to the wrongful death claim, there was no legal basis for the circuit court to award Rafael's parents $13,041 to reimburse them for the estate's funeral and burial expenses. Consequently, we reverse that award and remand with instructions to distribute that amount to Destiny as the sole beneficiary of the wrongful death claim.

### C. Attorney Fees

Petitioner Laureano challenges the award of attorney fees to special administrator Baez's attorney, Etherton. Petitioner contends that Etherton is not entitled to any attorney fees as a matter of law because Etherton's services were volunteered where Rafael's parents had no legal interest in the wrongful death claim. Petitioner also complains, for the first time on appeal, that Etherton was not acting on behalf of Rafael's estate because Baez was not named special administrator of the estate until after the insurance carrier tendered the policy limits. Further, petitioner complains, for the first time on appeal, that, instead of filing a complaint for wrongful death and survival claims, Etherton should have opened a probate case and presented the settlement there. According to petitioner, a probate judge would have immediately recognized the implications of Destiny's imminent birth and status as Rafael's only legal heir. Finally, petitioner argues that Etherton is not entitled to fees because it acted contrary to the best interest of Destiny.

In response, plaintiff Baez argues that her attorney Etherton was entitled to attorney fees based on their contract to represent the estate, for which Baez was properly appointed special administrator, and an equitable right to recover under the common fund doctrine.

A trial court's exercise of discretion in determining reasonable attorney fees is not reversed absent an abuse of discretion, but we apply *de novo* review where expenses awarded by the court are challenged as a matter of law. *Guerrant v. Roth*, 334 Ill. App. 3d 259, 262-63 (2002). We find that petitioner has failed to preserve for review any arguments concerning the timing of Baez's appointment as special administrator and the opening of a probate case. *McLaughlin v. Sternberg Lanterns, Inc.*, 395 Ill. App. 3d 536, 545 (2009) (arguments not raised in the trial court are forfeited on appeal). Petitioner also fails to cite any authority to support the proposition that a proper movant for a special administrator appointment under section 2.1 of the Wrongful Death Act must obtain that appointment before engaging an attorney to investigate or possibly settle a potential wrongful death claim. A party forfeits review of an argument unsupported by citation to authority. *Brown v. Tenney*, 125 Ill. 2d 348, 362-63 (1988); *Universal Casualty Co. v. Lopez*, 376 Ill. App. 3d 459, 465 (2007). Nevertheless, the court has a duty to protect the interests of minors and is bound to notice substantial irregularities even though objections were not properly presented on the minor's behalf. *Johnson v. Provena St. Therese Medical Center*, 334 Ill. App. 3d 581, 591 (2002).

Petitioner's forfeiture notwithstanding, the validity of Baez's challenged actions, *i.e.*, retaining an attorney to investigate the wrongful death claim and pursue a settlement before the court appointed Baez as special administrator, is supported by the principles for administrating estates under the Probate Act. Specifically, if letters of administration are granted to a person who cared for an estate prior to her appointment as administrator, the grant of the letters validates all acts executed by that person between the death and the appointment, if those acts would have

13

been proper under a regular administration. *Ashmore v. Newman*, 350 Ill. 64, 81 (1932); *Phelps v. Elgin, Joliet & Eastern Ry. Co.*, 37 Ill. App. 2d 46, 50 (1962). Here, the complained-of acts by Baez were consistent with prosecuting the wrongful death claim as a special administrator under section 2.1 of the Wrongful Death Act and, thus, were validated upon Baez's September 2008 appointment as the special administrator.

Next, we address petitioner's contention that Etherton cannot be paid under the terms of the contract with special administrator Baez because Etherton's services were on behalf of clients who clearly lacked any legal interest in the wrongful death claim. According to petitioner, Etherton's services were merely that of a volunteer because Destiny was the sole beneficiary of the wrongful death settlement. Petitioner's argument, however, overlooks the fact that, because Destiny was born out of wedlock and not acknowledged by Rafael as his child during his lifetime, Destiny had to prove she was Rafael's child before she could replace Rafael's parents as his next of kin and sole beneficiary under the Wrongful Death Act. Because Destiny was born out of wedlock six months after Rafael's death and her paternity was challenged, Rafael's parents had a legal interest during the prosecution and negotiation of the wrongful death claim as Rafael's next of kin and beneficiaries.

Rafael was adjudged, in accordance with section 2-2 of the Probate Act (755 ILCS 5/2-2 (West 2008)), to be Destiny's father on August 14, 2009, and petitioner did not challenge Baez's appointment as special administrator until after that adjudication. Although a February 2009 DNA test report indicated a 99.9% probability that Baez and Mario Marquez were Destiny's biological grandparents, we find no indication in the record that petitioner moved the court to

adjudicate the paternity sooner. Consequently, Baez was properly appointed special administrator pursuant to the Wrongful Death Act and acted within her authority to contract with Etherton for legal services.

"[W]hen an executor or administrator in good faith retains an attorney and that attorney has performed services on behalf of the estate, such attorney is entitled to reasonable compensation regardless of the outcome of the litigation or the fact that the executor is eventually removed." *In re Estate of Breault*, 63 Ill. App. 2d 246, 260 (1965). See also 755 ILCS 5/27-2 (West 2008) (Probate Act provision that the "attorney for a representative is entitled to reasonable compensation for his services"). When a complaint is settled in favor of the special administrator and proceeds in excess of $5,000 are distributable to a minor, the court allows disbursements and fees to the special administrator and her attorney and the balance is administered and distributed under the supervision of the probate division of the court. 740 ILCS 180/2.1 (West 2008).

In this case, however, we agree with petitioner's contention that Etherton is not entitled to fees because Etherton acted contrary to the best interest of Destiny. An attorney retained by a special administrator of an estate to prosecute a wrongful death action for the benefit of the next of kin owes a fiduciary duty to those beneficiaries. *DeLuna v. Burciaga*, 223 Ill. 2d 49, 78-79 (2006). That fiduciary duty includes a duty to act in good faith to protect the beneficiaries' interests. *Szymakowski v. Szymakowski*, 185 Ill. App. 3d 746, 748 (1989). If an attorney acts in bad faith and against the interest of the beneficiaries of the estate, attorney fees may be denied. *Id*. As a general principle, "attorneys may not recover fees after representing adverse,

15

conflicting, and antagonistic interests in the litigation." *In re Estate of Kirk*, 292 Ill. App. 3d 914, 923 (1997). We review a court's determination as to whether attorney fees should be allowed or disallowed for an abuse of discretion. *Id.* Factors to be considered in determining the reasonableness of fees include good faith, diligence, time expended, the size of the estate, the skills and qualifications of counsel, and the novelty and complexity of the issues confronted. *Id.*

Here, Etherton acted in the best interest of all the beneficiaries of the estate by negotiating a settlement for the limit of the insurance policy. At that time, the beneficiaries were only Rafael's parents. Etherton also acted in the beneficiaries' interests by contesting, on behalf of Rafael's parents, Destiny's paternity where she was born out of wedlock and not acknowledged by Rafael as his child during his lifetime. However, in February 2009, DNA testing indicated that Destiny was Rafael's child, and Baez never contested the validity of those test results. Although Destiny's paternity was not adjudicated until August 2009, it was inevitable, based on the test results and according to established law, that Destiny would replace Rafael's parents as his next of kin and sole beneficiary under the Wrongful Death Act. Nevertheless, Etherton never abandoned the argument that Rafael's parents were entitled to settlement proceeds based on dependency. *Cf. Szymakowski*, 185 Ill. App. 3d at 749-50 (there was no breach of fiduciary duty and the administrator's attorney was entitled to fees because the parents of the deceased timely abandoned their claim for wrongful death proceeds where the deceased was survived by children).

We find that Etherton breached a fiduciary duty owed to the beneficiary Destiny where Etherton continued to argue, after the DNA test results and contrary to established law, that the

determination of eligible beneficiaries for wrongful death proceeds was based on their actual dependency on the deceased rather than on the laws of intestacy. Specifically, in May 2009, Etherton filed a brief in support of plaintiff Baez's petition to distribute the settlement funds, which argued that the funds should go to Rafael's parents and brother based on their "actual dependency" on Rafael during his lifetime. Etherton's brief argued that Destiny was not entitled to any funds because her mother, in a previous instance, made an unfounded claim to be pregnant with Rafael's child, "continually harassed" Baez and her family, had "a brief encounter at best" with Rafael rather than an "ongoing committed relationship," and was never brought to Rafael's home and did not know where he lived.

In June 2009, Etherton filed a reply brief, which asserted that Rafael's parents and brother were entitled to settlement funds based on dependency and complained that Destiny failed to provide any facts to prove her dependance on Rafael. At the hearings held in this matter in July and August of 2009, Etherton continued to insist that the actual dependency on Rafael by his parents and brother controlled the distribution of the settlement funds. After the circuit court erroneously awarded settlement proceeds to Rafael's parents, Etherton opposed petitioner's motions for reconsideration and substitution of the special administrator, and asked the circuit court to sanction petitioner and her attorney. Morever, Etherton continued to argue on appeal, contrary to established law, that dependency on the deceased, rather than the laws of intestacy, determines the members of the class of beneficiaries eligible to receive wrongful death settlement proceeds. Because Etherton breached a fiduciary duty owed to Destiny, any award of attorney fees and costs based on Etherton's contract with the special administrator was an abuse of

17

1-10-0090

discretion.

Furthermore, we reject plaintiff Baez's claim that Etherton is entitled to attorney fees under the common fund doctrine. This claim is subject to *de novo* review. *Linker v. Allstate Insurance Co.*, 342 Ill. App. 3d 764, 770 (2003). The common fund doctrine allows an attorney "who creates, preserves, or increases the value of a fund in which others have an ownership interest to be reimbursed from that fund for litigation expenses incurred, including counsel fees." *Morris B. Chapman & Associates, Ltd. v. Kitzman*, 193 Ill. 2d 560, 572-73 (2000). The court's power to do equity in a particular situation authorizes the award of fees under this doctrine, which is based on the policy to avoid the unjust enrichment of someone who obtains the benefit of a lawsuit without contributing to its costs. *Linker*, 342 Ill. App. 3d at 770. A claim under the common fund doctrine must show that (1) the fund was created as the result of legal services performed by the attorney, (2) the subrogee or claimant did not participate in the creation of the fund, and (3) the subrogee or claimant benefitted or will benefit from the fund that was created. *Id.*

We find that the common fund doctrine is inapplicable in this case because Destiny's attorney participated in the creation of the fund. The record establishes that Richmond participated in creating the $100,000 settlement offer. Specifically, correspondence from the insurance carrier and Richmond's fee petition document Richmond's contacts with the insurance carrier prior to the settlement offer, investigation of the traffic collision, and monitoring of related court proceedings. Consequently, we reverse the circuit court's award to Etherton of $22,222 in attorney fees and $762.96 for expenses and remand this matter with instructions to

18

distribute those amounts to Destiny.

In her conclusion, petitioner Laureano asks this court to award attorney fees to her counsel in the amount established by their attorney-client contract or, in the alternative, remand this issue for review and approval by the circuit court. Petitioner, however, fails to support this request with any argument, discussion or citation to authority. *Brown*, 125 Ill. 2d at 362-63; *Universal Casualty Co.*, 376 Ill. App. 3d at 465. Despite petitioner's forfeiture of this issue, we find that the circuit court's exercise of discretion in awarding Richmond $8,200 for fees and $920 for costs was more than adequate to compensate Richmond for representing Destiny before the circuit court and for this appeal. Specifically, the time expended, size of the estate awarded to a minor, and complexity of the issues confronted do not justify any further compensation for Richmond.

### D. Substitution of the Special Administrator

Finally, petitioner Laureano challenges the circuit court's denial of her motion to substitute the special administrator. Although the need for this relief appears reduced at this point, further litigation here is possible. As discussed above, Baez was properly appointed special administrator where Rafael was not adjudged to be Destiny's father until August 2009. Upon that adjudication, Destiny became recognized as Rafael's next of kin and sole beneficiary under the Wrongful Death Act. Moreover, Destiny's recognized interest in Rafael's estate was in conflict with the interests of Baez and Mario Marquez. Consequently, Baez was no longer entitled to the appointment of special administrator for Rafael for the purpose of prosecuting the wrongful death action. See 740 ILCS 180/2.1 (West 2008); *Mio v. Alberto-Culver Co.*, 306 Ill.

19

App. 3d 822, 827 (1999).

Accordingly, we reverse the circuit court's denial of petitioner's motion to substitute the special administrator and remand this cause to the circuit court with directions to review petitioner's motion to appoint Laureano to serve as special administrator.

### III. CONCLUSION

We reverse the circuit court's award of settlement proceeds to Rafael's parents; reverse the award of funeral and burial expenses to Rafael's parents; reverse the award of attorney fees and costs to Etherton; and reverse the denial of petitioner Laureano's motion to substitute the special administrator. The cause is remanded to the circuit court for further proceedings consistent with this opinion.

Reversed and remanded.

1-10-0090

REPORTER OF DECISIONS - ILLINOIS APPELLATE COURT

---

JUDITH BAEZ, Individually and as Special Administrator of the Estate of Rafael Marquez, Deceased,

Plaintiff-Appellee,

v.

GARRETT ROSENBERG,

Defendant

(Jesenia Laureano, Guardian of the Estate of Destiny Alexia Marquez, a Minor,

Petitioner-Appellant).

---

No. 1-10-0090

Appellate Court of Illinois
First District, FIRST DIVISION

May 9, 2011

---

JUSTICE LAMPKIN delivered the judgment of the court, with opinion.

Presiding Justice Hall and Justice Rochford concurred in the
judgment and opinion.

---

Appeal from the Circuit Court of Cook County.
The Hon. Ronald S. Davis, Judge Presiding.

---

**COUNSEL FOR PETITIONER-APPELLANT**
Michael R. Richmond and Michael W. Rathsack, Chicago, IL 60602


**COUNSEL FOR PLAINTIFF-APPELLEE**
Regina P. Etherton & Associates, LLC, Chicago, IL 60603
OF COUNSEL: Regina P. Etherton