# Illinois Official Reports

## Appellate Court

***Brooks v. McLean County Unit District No. 5*, 2014 IL App (4th) 130503**

| | |
|---|---|
| Appellate Court Caption | JASMINE BROOKS, as Special Administrator of the Estate of Donnie Hampton, Deceased, Plaintiff-Appellant, v. McLEAN COUNTY UNIT DISTRICT NO. 5, Defendant-Appellee. |
| District & No. | Fourth District<br>Docket No. 4-13-0503 |
| Filed | April 18, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Plaintiff's first amended complaint seeking to recover from defendant school district for the death of plaintiff's decedent after playing a game with other students called "Body Shots" in which the students voluntarily hit each other with their fists while in a school bathroom was properly dismissed pursuant to section 3-108 of the Tort Immunity Act, on the ground that the complaint failed to adequately allege that the school district was guilty of willful and wanton conduct, especially in the absence of any allegations that defendant engaged in a "course of conduct" showing a deliberate intention to harm decedent or an "utter indifference to or conscious disregard" for his safety, that the district knew of any past injuries to students who played the game, or that the district had any reason to know decedent was more likely to play the game than any other student. |
| Decision Under Review | Appeal from the Circuit Court of McLean County, No. 12-L-126; the Hon. Rebecca Simmons Foley, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | Bruce A. Slivnick (argued), Todd A. Heller, and Andrea J. Beer, all of Law Offices of Todd A. Heller & Associates, of Deerfield, for appellant. |
| --- | --- |
| | Craig L. Unrath and Brad A. Elward (argued), both of Heyl, Royster, Voelker & Allen, PC, of Peoria, for appellee. |
| Panel | JUSTICE POPE delivered the judgment of the court, with opinion. Presiding Justice Appleton and Justice Knecht concurred in the judgment and opinion. |

**OPINION**

¶ 1    On May 18, 2010, Donnie Hampton, a student at Kingsley Junior High School (Kingsley) in Normal, Illinois, was in a boys' bathroom at the school with other students playing a "game" called "Body Shots." According to the complaint in this case, the game involved students voluntarily punching each other with closed fists as hard as they could in the abdomen, chest, and ribs. After participating in the game, Hampton exited the bathroom, collapsed in the hallway, and later died.

¶ 2    On February 1, 2013, plaintiff, Jasmine Brooks, the special administrator of Hampton's estate, filed a first amended three-count complaint against McLean County Unit District No. 5 (McLean), which operated Kingsley. The complaint alleged, *inter alia*, Hampton's death was the result of willful and wanton conduct on the part of McLean. On February 19, 2013, McLean filed a combined motion to dismiss the complaint with prejudice, which the trial court granted.

¶ 3    Brooks appeals, arguing the trial court erred in (1) applying the public-duty rule instead of engaging in a traditional duty analysis, (2) finding the complaint failed to plead sufficient facts to establish willful and wanton misconduct, and (3) holding the complaint was barred by sections 4-102, 2-201, and 2-109 of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/4-102, 2-201, 2-109 (West 2012)). We affirm.

¶ 4                    I. BACKGROUND

¶ 5    Count I of Brooks' first amended three-count complaint sought medical expenses under the Illinois Rights of Married Persons Act, often referred to as the Family Expense Act (750 ILCS 65/15 (West 2012)). Count II sought recovery under the Illinois Wrongful Death Act (740 ILCS 180/1 (West 2012)). Count III sought damages pursuant to the Illinois Survival Act (755 ILCS 5/27-6 (West 2012)).

¶ 6        The allegations common to all three counts include the following: (1) the "Body Shots" game was routinely played at Kingsley and other schools in the district for more than a year prior to Hampton's death; (2) students had been injured playing the game prior to Hampton's death; (3) McLean owed a duty to hire competent staff to instruct students regarding the dangers of playing the game; (4) Lynette Mehall, Kingsley's principal, and/or Marlys Bennington, Kingsley's support principal, knew students played the game in Kingsley bathrooms; (5) the staff at Kingsley, who stand *in loco parentis* status to the students, failed to control the behavior of the students and punish known dangerous behavior to prevent injury; (6) McLean owed a duty to supervise students to prevent them from playing the game; (7) McLean's failure to supervise the students and enforce its policies despite its prior knowledge amounted to willful and wanton conduct; (8) McLean willfully and wantonly (a) failed to monitor the bathrooms to make sure students were not striking each other, (b) failed to educate its students regarding the dangers of playing the game, (c) allowed students to play the game on school premises, (d) failed to enforce policies and procedures to prevent students from playing the game and/or engaging in other physically violent behaviors on school premises, and (e) failed to keep the students safe; and (9) McLean's willful and wantons acts or omissions resulted in the injuries causing Hampton's death.

¶ 7        On February 19, 2013, McLean filed a combined motion to dismiss Brooks' complaint pursuant to section 2-619.1 of the Code of Civil Procedure (Procedure Code) (735 ILCS 5/2-619.1 (West 2012)) (allowing combined motions under sections 2-615 and 2-619 of the Procedure Code (735 ILCS 5/2-615, 2-619 (West 2012))), arguing the following: (1) counts I and III should be dismissed because no probate estate had been opened and Brooks' authority as special administrator only allowed for prosecution of a wrongful death claim, *i.e.*, count II; (2) McLean owed no duty to protect individual students from tortious acts of others under the public-duty rule; (3) Brooks failed to allege a special-duty exception to the public-duty rule; (4) assuming McLean owed a duty, the complaint was still barred by various sections of the Tort Immunity Act (745 ILCS 10/4-102, 2-201, 2-109 (West 2012)); and, finally, (5) even assuming McLean owed a duty and the Tort Immunity Act did not apply, the complaint should still be dismissed because Brooks failed to plead sufficient facts to demonstrate willful and wanton conduct.

¶ 8        On April 25, 2013, the trial court held a hearing on McLean's motion to dismiss. We note no report of the proceedings for this hearing is included in the record on appeal.

¶ 9        On May 1, 2013, the trial court dismissed the complaint with prejudice on section 2-615 grounds (735 ILCS 5/2-615 (West 2012)) where it (1) failed to allege facts demonstrating a special duty was owed under the public-duty rule and (2) failed to allege facts demonstrating willful and wanton conduct. The court also dismissed the complaint pursuant to section 2-619 of the Procedure Code (735 ILCS 5/2-619 (West 2012)) finding it was barred by sections 4-102, 2-201, and 2-109 of the Tort Immunity Act (745 ILCS 10/4-102, 2-201, 2-109 (West 2012)).

¶ 10        This appeal followed.

¶ 11                                    II. ANALYSIS

¶ 12        On appeal, Brooks argues the trial court erred in (1) applying the public-duty rule instead of engaging in a traditional duty analysis, (2) finding the complaint failed to plead sufficient facts to establish willful and wanton misconduct, and (3) holding the complaint was barred by

sections 4-102, 2-201, and 2-109 of the Tort Immunity Act.

¶ 13                                    A. Standard of Review

¶ 14        Section 2-619.1 of the Procedure Code (735 ILCS 5/2-619.1 (West 2012)) permits a
defendant to file a combined motion to dismiss pursuant to sections 2-615 and 2-619 of the
Procedure Code (735 ILCS 5/2-615, 2-619 (West 2012)). A section 2-615 motion to dismiss
"tests the legal sufficiency of the complaint," while a section 2-619 motion "admits the legal
sufficiency of the complaint, but asserts affirmative matter outside the complaint that defeats
the cause of action." *Kean v. Wal-Mart Stores, Inc.*, 235 Ill. 2d 351, 361, 919 N.E.2d 926,
931-32 (2009). This court reviews the dismissal under either section *de novo*. *Kean*, 235 Ill. 2d
at 361, 919 N.E.2d at 932. On appeal, we "review the trial court's judgment, not its rationale,"
and we "can affirm for any reason the record supports." *People v. Reed*, 361 Ill. App. 3d 995,
1000, 838 N.E.2d 328, 332 (2005).

¶ 15                              B. Standing to Bring Counts I and III

¶ 16        As an initial matter, McLean argues we should affirm the trial court's dismissal of count I
(Family Expense Act) and count III (Survival Act) because Brooks lacked standing to bring
those claims. Specifically, McLean contends counts I and III should be dismissed because no
probate estate had been opened and Brooks' authority as special administrator only allowed the
prosecution of a wrongful death claim, *i.e.*, count II.

¶ 17        In her appellate brief, Brooks agrees no probate estate had been opened in this case. As
such, she only had standing to bring a claim under the Wrongful Death Act (count II). See 740
ILCS 180/2.1 (West 2012) (appointment of a special administrator under the Wrongful Death
Act is for the sole purpose of either prosecuting or defending the wrongful death action); *Baez
v. Rosenberg*, 409 Ill. App. 3d 525, 532, 949 N.E.2d 250, 259 (2011) ("[w]hereas executors
and administrators appointed under the Probate Act are given powers to collect and manage[ ]
assets, pay claims and make distributions [citation], the powers and duties of a special
administrator are strictly limited to those prescribed by the wrongful death statute [citation]").
Accordingly, Brooks' authority to prosecute a cause of action "was limited to the wrongful
death claim." *Baez*, 409 Ill. App. 3d at 533, 949 N.E.2d at 259.

¶ 18        Brooks concedes the point, stating in her reply brief a probate estate would be opened and
she would file an amended complaint "to cure any defect in this regard" if the matter is
reversed. Although this issue was raised in McLean's motion to dismiss, no probate estate was
opened and Brooks did not move to amend the complaint. Considering the state of the case
before us and Brooks' acknowledgment she lacked standing to prosecute other claims as
special administrator, we affirm the trial court's dismissal of counts I and III. See *In re
Marriage of Gary*, 384 Ill. App. 3d 979, 987, 894 N.E.2d 809, 816 (2008) (we may affirm on
any basis supported by the record, regardless of whether the trial court based its decision on it).
Accordingly, we will confine our review on appeal to Brooks' wrongful death claim (count II).
(We note the core allegations of count II mirror those of counts I and III.)

¶ 19                                       C. Duty of Care

¶ 20        No separate and independent tort of willful and wanton conduct exists in Illinois. *Ziarko v.
Soo Line R.R. Co.*, 161 Ill. 2d 267, 274, 641 N.E.2d 402, 406 (1994). Instead, it is viewed as an

aggravated form of negligence. *Sparks v. Starks*, 367 Ill. App. 3d 834, 837, 856 N.E.2d 575, 577 (2006). In order to recover damages based on willful and wanton conduct, a plaintiff must plead and prove the basic elements of a negligence claim, *i.e.*, (1) defendant owed a duty to the plaintiff, (2) defendant breached the duty, and (3) the breach was the proximate cause of the plaintiff's injury. *Krywin v. Chicago Transit Authority,* 238 Ill. 2d 215, 225, 938 N.E.2d 440, 446 (2010). In addition, a plaintiff must allege either a deliberate intention to harm or a conscious disregard for the plaintiff's welfare. *Doe v. Chicago Board of Education*, 213 Ill. 2d 19, 28, 820 N.E.2d 418, 423 (2004). However, we must first determine whether McLean owed Hampton a duty. See *Scarano v. Town of Ela*, 166 Ill. App. 3d 184, 187, 520 N.E.2d 62, 64 (1988) (duty is a prerequisite to any willful and wanton cause of action). The question of whether a duty exists is a question of law. *Krywin*, 238 Ill. 2d at 226, 938 N.E.2d at 447.

¶ 21                                    1. *Public-Duty Rule*

¶ 22         Brooks argues the trial court erred in applying the public-duty rule in determining whether McLean owed a duty instead of engaging in a traditional duty analysis. We agree.

¶ 23         "The public[-]duty rule is a long-standing precept which establishes that a governmental entity and its employees owe no duty of care to individual members of the general public to provide governmental services, such as police and fire protection. [Citation.] This rule of nonliability is grounded in the principle that the duty of the governmental entity to 'preserve the well-being of the community is owed to the public at large rather than to specific members of the community.' [Citation.]" *Zimmerman v. Village of Skokie*, 183 Ill. 2d 30, 32, 697 N.E.2d 699, 702 (1998). As such, the public-duty rule has historically been applied to cases involving conduct by policemen, firemen, or other first-responder-type personnel of various branches of governmental entities. See *Doe-3 v. White*, 409 Ill. App. 3d 1087, 1095, 951 N.E.2d 216, 225 (2011) ("rule generally applies when a plaintiff alleges damages based on a governmental entity's failure to perform adequate governmental services").

¶ 24         The public-duty rule was applied to a school district in *Thames v. Board of Education*, 269 Ill. App. 3d 210, 645 N.E.2d 445 (1994). That case involved allegations the defendant's failure to install metal detectors or to adopt weapons interdiction measures, despite knowledge guns had previously been brought into some of the defendant's schools, caused a student's death. *Thames*, 269 Ill. App. 3d at 211, 645 N.E.2d at 447. The rule was applied in a school context again in *Lawson v. City of Chicago*, 278 Ill. App. 3d 628, 662 N.E.2d 1377 (1996). However, like *Thames*, that case involved allegations a student's death on school premises was caused by the school board's failure to maintain its property by having metal detectors. *Lawson*, 278 Ill. App. 3d at 632-33, 662 N.E.2d at 1381. In both cases, the allegations attacked the schools' respective failures to implement police-like protective measures. The allegations in this case do not approach those in either *Thames* or *Lawson*.

¶ 25         Moreover, the question is not whether the public-duty rule should be applied to a school district. Instead, it is the nature of the alleged conduct which determines the rule's applicability. See *Doe-3*, 409 Ill. App. 3d at 1096, 951 N.E.2d at 226 (noting the distinction between "conduct that would give rise to a conclusion that a governmental entity owes a duty to protect the public at large and not individual citizens and conduct by the governmental entity that specifically creates the danger complained of"). Here, Brooks does not allege McLean owed an affirmative duty to protect Hampton. Instead, the complaint alleges McLean's failure to supervise students, educate them on the danger of playing the game, and enforce existing

policies created the danger to Hampton. As such, the public-duty rule is not implicated in this case. See *Doe-3 v. McLean County Unit District No. 5 Board of Directors*, 2012 IL 112479, ¶ 40, 973 N.E.2d 880 (finding public-duty rule not applicable where the "plaintiffs [did] not allege [the] defendants failed to protect them or that they owed any affirmative duty to do so").

¶ 26                                    2. *Traditional Duty Analysis*

¶ 27       Because we have found the public-duty rule inapplicable in this case, we must now determine whether Brooks' allegations demonstrate sufficient facts to establish the existence of a duty under a traditional duty analysis. The existence of a duty is a question of law shaped by public policy considerations. *LaFever v. Kemlite Co.*, 185 Ill. 2d 380, 388, 706 N.E.2d 441, 446 (1998). Whether the law will impose an obligation of reasonable conduct upon a defendant for the benefit of a plaintiff depends on the nature of their relationship. *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 441, 856 N.E.2d 1048, 1060 (2006); *LaFever*, 185 Ill. 2d at 388-89, 706 N.E.2d at 446. The following four factors are relevant to whether a duty exists: (1) the reasonable foreseeability of the plaintiff's injury, (2) the reasonable likelihood of the injury, (3) the magnitude of the defendant's burden of guarding against the injury, and (4) the consequences of placing that burden on the defendant. *LaFever*, 185 Ill. 2d at 389, 706 N.E.2d at 446.

¶ 28       In this case, the complaint alleged McLean knew the game was being played by students in the bathrooms of its schools for a year prior to Hampton's death. The complaint further alleged Mehall and/or Bennington was aware the game "involved boys striking each other about the chest and abdomen." The complaint stated "several students" had been injured playing the game. Brooks also alleged the staff at Kingsley, "who stand *in loco parentis* status to the students," failed "to control the behavior of the students" and "punish known dangerous behavior to prevent injury to students." See *Henrich v. Libertyville High School*, 186 Ill. 2d 381, 388, 712 N.E.2d 298, 302 (1998) (section 24-24 of the School Code (105 ILCS 5/24-24 (West 1994)) confers on educators *in loco parentis* status in matters relating to the supervision of students). The complaint also alleged McLean's failure to properly supervise its students led to Hampton's injuries.

¶ 29       We find Brooks' first amended complaint sufficiently established McLean owed a duty to supervise the students as part of an overall duty to maintain discipline. See 105 ILCS 5/24-24 (West 2012) (educational employees "shall maintain discipline in the schools"). Once a court determines a duty exists, the next inquiry is whether the Tort Immunity Act applies. *Arteman v. Clinton Community Unit School District No. 15*, 198 Ill. 2d 475, 480, 763 N.E.2d 756, 760 (2002) (citing *Village of Bloomingdale v. CDG Enterprises, Inc.*, 196 Ill. 2d 484, 490, 752 N.E.2d 1090, 1096 (2001)).

¶ 30                                       D. Tort Immunity Act

¶ 31       A public entity is liable in tort to the same extent as a private party unless an immunity provision applies. *Trtanj v. City of Granite City*, 379 Ill. App. 3d 795, 802-03, 884 N.E.2d 741, 748 (2008). Immunity from suit under the Tort Immunity Act is an "affirmative matter" properly raised under section 2-619(a)(9) of the Procedure Code. *DeSmet v. County of Rock Island*, 219 Ill. 2d 497, 504, 848 N.E.2d 1030, 1035 (2006); *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 367, 799 N.E.2d 273, 278 (2003); 735 ILCS 5/2-619(a)(9) (West 2012). "Because the immunities afforded to governmental entities operate as an affirmative defense,

- 6 -

those entities bear the burden of properly raising and proving their immunity under the [Tort Immunity] Act." *Van Meter*, 207 Ill. 2d at 370, 799 N.E.2d at 280; *DeSmet*, 219 Ill. 2d at 504, 848 N.E.2d at 1035. "It is only when the governmental entities have met this burden that a plaintiff's right to recovery is barred." *Van Meter*, 207 Ill. 2d at 370, 799 N.E.2d at 280. Here, the trial court found the complaint was barred by sections 4-102, 2-201, and 2-109 of the Tort Immunity Act (745 ILCS 10/4-102, 2-201, 2-109 (West 2012)).

¶ 32　　　Section 4-102 of the Tort Immunity Act provides, in relevant part, the following:

> "Neither a local public entity nor a public employee is liable for failure to establish a police department or otherwise provide police protection service or, if police protection service is provided, for failure to provide adequate police protection or service, failure to prevent the commission of crimes, failure to detect or solve crimes, and failure to identify or apprehend criminals." 745 ILCS 10/4-102 (West 2012).

¶ 33　　　Brooks argues McLean's failure to monitor students in the bathrooms should be seen more as a supervisory act under section 3-108 and not a police protective act per section 4-102 of the Tort Immunity Act. The rationale underlying Brooks' argument is the fact section 3-108 contains an exception for willful and wanton conduct and section 4-102 does not.

¶ 34　　　Sections 3-108(a) and (b) of the Tort Immunity Act, which provide immunity for injuries resulting from a failure to supervise, state the following:

> "(a) Except as otherwise provided in this Act, neither a local public entity nor a public employee who undertakes to supervise an activity on or the use of any public property is liable for an injury unless the local public entity or public employee is guilty of willful and wanton conduct in its supervision proximately causing such injury.
>
> 　(b) Except as otherwise provided in this Act, neither a local public entity nor a public employee is liable for an injury caused by a failure to supervise an activity on or the use of any public property unless the employee or the local public entity has a duty to provide supervision imposed by common law, statute, ordinance, code or regulation and the local public entity or public employee is guilty of willful and wanton conduct in its failure to provide supervision proximately causing such injury." 745 ILCS 10/3-108(a), (b) (West 2012).

¶ 35　　　While a broad reading of Brooks' allegations could arguably describe McLean's failure to protect its students, the allegations more properly relate to McLean's failure to supervise them despite knowing the game was being played in the bathrooms of its schools. Only an unreasonably broad reading could cast the complaint as alleging a failure on the part of McLean to provide "police protection services" for its students while in the bathrooms. Likewise, reading the complaint to allege *only* a failure to protect claim would be to construe the pleadings too narrowly. Thus, we view the allegations in Brooks' complaint as asserting McLean failed to supervise its students. Based on the allegations in Brooks' complaint, we find section 4-102 of the Tort Immunity Act does not immunize McLean from liability.

¶ 36　　　However, because we have characterized the allegations as alleging a failure to supervise, we agree section 3-108 of the Tort Immunity Act does apply in this case. As stated, section 3-108 contains an exception for willful and wanton conduct not found in section 4-102. Thus, in order to defeat McLean's immunity under section 3-108, Brooks' complaint must properly allege willful and wanton conduct on McLean's part. See *Doe v. Chicago Board of Education*,

339 Ill. App. 3d 848, 856, 791 N.E.2d 1283, 1290 (2003).

¶ 37                              E. Willful and Wanton Conduct

¶ 38        The Tort Immunity Act defines willful and wanton conduct as "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." 745 ILCS 10/1-210 (West 2012). "A determination of willful and wanton conduct will be based on the facts of any given case." *Burke v. 12 Rothschild's Liquor Mart, Inc.*, 148 Ill. 2d 429, 451, 593 N.E.2d 522, 532 (1992). "When the plaintiff is alleging that the defendant engaged in willful and wanton conduct, such conduct must be shown through well-pled facts, and not by merely labelling the conduct willful and wanton." *Winfrey v. Chicago Park District*, 274 Ill. App. 3d 939, 943, 654 N.E.2d 508, 512 (1995). Thus, to properly plead willful and wanton conduct, Brooks' complaint must allege facts demonstrating either a deliberate intention to harm or utter indifference toward or conscious disregard for Hampton's welfare.

¶ 39        Paragraph 16 of Brooks' complaint contains the following allegations of McLean's willful and wanton conduct:

> "[McLean,] in light of its employees' prior knowledge of THE GAME and its potential consequences, was guilty of one or more of the following acts or omissions of negligence:
>
>        a) Willfully and wantonly failed to monitor the bathrooms and other areas of the school to make sure the students were not striking each other;
>        b) Willfully and wantonly failed to educate its students regarding the danger of playing THE GAME;
>        c) Willfully and wantonly allowed students to play THE GAME on school premises;
>        d) Willfully and wantonly failed to enforce policies and procedures to prevent students from playing THE GAME and/or other physically violent behavior on school premises.
>        e) Was otherwise willful and wanton in keeping the students safe."

¶ 40        However, Brooks' complaint does not plead facts establishing a "course of action" showing a deliberate intention by McLean to harm Hampton. Nor does the complaint allege sufficient facts establishing an "utter indifference to or conscious disregard" for Hampton's safety. Instead, the complaint states generally McLean knew the game was being played in bathrooms of the school and failed to monitor students in the bathrooms in order to keep those students safe. However, "[a]llegations of a failure to supervise student activities are not sufficient to state a cause of action for wilful and wanton misconduct." *Holsapple v. Casey Community Unit School District C-1*, 157 Ill. App. 3d 391, 393, 510 N.E.2d 499, 500 (1987).

¶ 41        Further, while the complaint alleges "[s]everal kids who play THE GAME in [McLean's] junior high schools have been hurt," it stops short of pleading McLean had any knowledge of past injuries to its students. Although the complaint describes the game as consisting of "people voluntarily punching each other as hard with closed fists as they can in the abdomen, chest[,] and ribs," it does not allege McLean was aware of the extent of what the game entailed. Instead, the complaint alleges only Mehall and/or Bennington was aware the game "involved boys striking each other about the chest and abdomen." Moreover, the complaint does not allege facts demonstrating McLean was aware Hampton had previously engaged in the

- 8 -

behavior or any specific danger to Hampton existed on May 18, 2010. In fact, nothing in the complaint suggests McLean had any reason to know Hampton was any more likely to engage in the behavior than any other student in any of the schools in the district.

¶ 42 Overall, Brooks alleged no facts, which, if proved, would permit the inference McLean's conduct was willful and wanton, as opposed to possibly merely negligent. Because Brooks' complaint does not adequately plead allegations of willful and wanton conduct, section 3-108 of the Tort Immunity Act operates to immunize McLean from liability in this case. See *Henrich*, 186 Ill. 2d at 391, 712 N.E.2d at 304 (plain language of section 3-108 of the Tort Immunity Act immunizes against a failure to supervise).

¶ 43 In sum, although McLean owed a duty to supervise its students, Brooks' first amended complaint was properly dismissed pursuant to section 3-108 of the Tort Immunity Act where the complaint failed to adequately plead allegations showing willful and wanton conduct. Because we have found section 3-108 applies, we need not address whether section 2-201 or 2-109 of the Tort Immunity Act also apply. See *DeSmet*, 219 Ill. 2d at 509, 848 N.E.2d at 1038 (it is the reviewing court's prerogative to forgo determination of issues unnecessary to the outcome of a case).

¶ 44 III. CONCLUSION
¶ 45 For the reasons stated, we affirm the trial court's judgment.

¶ 46 Affirmed.