KIMMY BROWN & another[1] *vs.* BAYVIEW CREMATORY, LLC.

No. 10-P-54.

Suffolk. December 2, 2010. - April 26, 2011.

Present: CYPHER, KANTROWITZ, & BERRY, JJ.

*Dead Body. Contract,* Performance and breach. *Negligence,* Emotional distress. *Emotional Distress. Damages,* Emotional distress. *Boston Municipal Court. District Court,* Jurisdiction. *Practice, Civil,* Verdict, Judgment notwithstanding verdict.

No jurisdictional or procedural bar existed to the trial of a civil action by a six-person jury in the Boston Municipal Court, where no party objected and there was no adverse action by the judge. [339-340]

At the trial of a civil complaint alleging breach of contract, negligence, and negligent infliction of emotional distress, the judge properly denied the defendant's motion for judgment notwithstanding the verdict, where nothing in the law prevented the jury from finding that the plaintiffs suffered injury due to mental distress occasioned by the defendant's handling of the remains of the plaintiffs' mother and the accompanying paperwork, even where the jury found that the plaintiffs did not suffer sufficient physical manifestation or objective symptoms to recover for negligently inflicted emotional distress. [340-343]

CIVIL ACTION commenced in the Superior Court Department on March 24, 2004.

After transfer to the Dorchester Division of the Boston Municipal Court Department, the case was tried before *David T. Donnelly*, J., and a motion for judgment notwithstanding the verdict or for a new trial was heard by him.

*William P. Smith* for the defendant.

*Andrew M. Fischer* for the plaintiffs.

CYPHER, J. The defendant, Bayview Crematory, LLC (Bayview), appeals from a judgment of the Dorchester Division of the Boston Municipal Court Department issued after a jury

---

[1]Joy Brown.

awarded the plaintiffs damages on their contract and tort claims arising from Bayview's cremation of the remains of their mother, Greta Marie Brown (Greta), in 2003. Bayview argues that (1) because the jury trial was conducted in violation of G. L. c. 231, § 102C, the verdict was a nullity; and (2) its motion for judgment notwithstanding the verdict should have been allowed. Alternatively, Bayview argues that the verdict was excessive and against the weight of the evidence, requiring a new trial. We affirm.

*Background.* The plaintiffs contracted with the Floyd A. Williams Funeral Home (Floyd Williams), in the Dorchester section of Boston, for funeral services for their mother, Greta, in February, 2003. At the request of the plaintiffs, arrangements for cremation of her body were made by Floyd Williams with Bayview of Seabrook, New Hampshire. The plaintiffs authorized the cremation by executing a form provided by Floyd Williams. Following cremation in February, 2003, Bayview sent a box containing the ashes in a temporary plastic urn to Floyd Williams. When the plaintiffs decided to open the box and the urn, they discovered an envelope in the urn containing a cremation certificate with the name of another woman, although all of the other information was the same as the identification information for Greta which had been given to Bayview. The envelope, urn, and the box all were correctly labeled "Greta Marie Brown." Uncertain that the ashes that they had received were those of their mother, the plaintiffs filed a complaint in the Superior Court on March 24, 2004, alleging breach of contract, negligence, and infliction of emotional distress.[2]

The case was transferred to the Dorchester Division of the Boston Municipal Court Department on May 31, 2005, and was tried on May 29 and 30, 2007. In answer to special questions, the jury awarded the plaintiff Kimmy Brown (Kimmy) $250 on her contract claim, and $100,000 each to Kimmy and to the plaintiff Joy Brown (Joy) on their claims of negligence. The jury also found that Bayview negligently inflicted emotional

---

[2]Floyd Williams was named as a defendant in the Superior Court complaint. The docket in the Dorchester Division of the Boston Municipal Court Department shows that before trial, a judgment of dismissal of the plaintiffs' claim as to Floyd Williams was entered on June 8, 2007, by agreement of the parties. Accordingly, Floyd Williams is not a party in this appeal.

distress on each plaintiff, but made no award of damages, as the jurors specifically found no physical harm.

Following the denial of Bayview's motion for judgment notwithstanding the verdict or for a new trial, an amended judgment was entered and Bayview appealed to the Appellate Division of the Boston Municipal Court Department. The Appellate Division determined that Bayview's claims had no merit and dismissed the appeal.

*Discussion.* 1. *The propriety of the jury trial in the Boston Municipal Court.* Bayview first raised the issue of noncompliance with G. L. c. 231, § 102C, in its motion for judgment notwithstanding the verdict or for a new trial, and the plaintiffs responded, stating that unspecified statutory changes provide for jury trials in the Boston Municipal Court. At the time the plaintiffs' complaint was filed in the Superior Court in March, 2004, a jury trial was not available in the Boston Municipal Court under G. L. c. 231, § 102C.[3] Soon after, however, G. L. c. 218, § 19B, as amended by St. 2004, c. 252, § 22, provided for jury trials filed in the District and Boston Municipal Courts after August 31, 2004. The parties and the trial judge availed themselves of that procedure and the matter was tried without objection to a six-person jury.

"Under the 2004 legislative scheme, G. L. c. 218, § 19A, explicitly provides that the $25,000 limit is not jurisdictional. It is, nevertheless, a statutory requirement . . . [that] is 'procedural' rather than jurisdictional." *Sperounes* v. *Farese*, 449 Mass. 800, 805-806 (2007). Accordingly, "an objection to whether that requirement has been satisfied must be raised by the defendant, at a minimum, in his answer, and . . . the failure to raise an objection in a timely manner results in its waiver." *Id.* at 806.[4]

The case was ordered remanded to the Dorchester Division

---

[3]"Until 1996, the District Court handled civil matters under the 'remand-removal' system. Under that system, cases filed in the Superior Court with a claim for $25,000 or less were transferred to the District Court for a bench trial. G. L. c. 231, § 102C, as amended through St. 1986, c. 278, § 1." *Sperounes* v. *Farese*, 449 Mass. 800, 802 (2007). The 1996 changes to the system applied only to cases filed in certain counties, not including Suffolk County.

[4]Regarding jurisdictional and procedural matters in the District Court after the amendment of G. L. c. 218, § 19, see Perlin & Connors, Civil Procedure in the Massachusetts District Court § 1.2 (4th ed. 2009).

of the Boston Municipal Court Department on May 25, 2005. Following remand, there was a long delay before trial in May, 2007. There is no indication that Bayview timely raised the procedural issue, and in any event, by appearing and participating in the trial, Bayview waived the defense.

In these circumstances, where it is apparent that there were no objections by the parties or any adverse actions by the judge, we conclude that there was no jurisdictional or procedural bar to trial of the present case in the Boston Municipal Court.

2. *The verdicts.* In answer to specific questions, the jury found that Bayview was in breach of the contract with the plaintiffs and that the plaintiffs were harmed, and awarded damages of $250 to Kimmy but none to Joy. The jury answered that Bayview was "negligent with respect to the ashes of Greta Mari[e] Brown" and that the plaintiffs were caused harm, and awarded damages of $100,000 to each plaintiff. The jury also found that Bayview had negligently inflicted emotional distress on each plaintiff causing severe emotional distress, but that neither plaintiff suffered sufficient "physical manifestation or objective symptoms," and awarded no damages. Bayview argues that because the jury found that the plaintiffs did not suffer sufficient physical manifestation or objective symptoms to recover for negligently inflicted emotional distress, the award of damages for simple negligence was improper.

The plaintiffs testified, describing their reactions when they opened the box and the urn containing the ashes. All of the labeling on the box, the urn, and an envelope containing a cremation certificate correctly identified Greta, but the name of another woman appeared on the certificate of cremation. Kimmy described feeling numb, not knowing whether the ashes were those of her mother; she feared that the ashes had been combined with those of another person. She was sad, angry, worried, scared, and depressed; she cried and was unable to feel any closure in regard to her mother's death. She saw a physician, who treated her for depression and prescribed medication. Joy was upset and hurt, and also feared that the ashes were not her mother's or could have been mixed with those of another person. She began to shake and became nervous and stressed; her grieving was made worse, and she started to drink on weekends.

James Fuller, who actually carried out the cremation of Greta, was deceased at the time of trial; therefore, Lawrence Stokes, then superintendent of Bayview, testified regarding his supervisory role and his experience performing cremations at Bayview. He described Bayview's cremation procedure and his review of the records at issue. Greta's cremation was performed by Fuller during a time Stokes was in Florida. He testified that Fuller was familiar with and followed Bayview's procedures and that he and Fuller communicated frequently by telephone. Stokes stated that each body received was assigned a unique numbered metal tag which accompanied the body throughout the cremation process and was subsequently attached to a plastic bag containing the ashes. Bayview's cremation apparatus, called a retort, could accept only one body at a time. The tag numbered 3004 was assigned to Greta's remains, and that tag was found in the urn with ashes when the plaintiffs opened the box.

Stokes explained that the appearance of the name of another woman on the certificate was a clerical error made during the preparation of the certificate. Bayview used a computer word processing program to print the labels and the certificate. The program retrieved the previous certificate and the operator had to delete the previous information and enter the new information. In this instance, all of the correct information for Greta was entered, except for her name.[5]

The judge did not err by denying Bayview's motion for judgment notwithstanding the verdict. Allowance of such a motion is proper when the evidence, construed in a light most favorable to the nonmoving party, nonetheless justifies a verdict for the moving party. *Goldberg* v. *Northeastern Univ.*, 60 Mass. App. Ct. 707, 709 (2004). "More specifically, the test has been stated as whether 'anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn in favor of the [nonmoving party].' " *Poirier* v. *Plymouth*, 374 Mass. 206, 212

[5]The certificate stated that the requisite burial permit and medical examiner's certificate had been presented, and included information on the place, date and time, and cause of death, and age at death. The certificate also stated that cremation number 3004 had been performed on February 20, 2003. The age at death stated was incorrect, but Bayview had used the age that had been submitted by Floyd Williams.

(1978), quoting from *Raunela* v. *Hertz Corp.*, 361 Mass. 341, 343 (1972).

From the evidence the jury could have easily found the elements of negligence. Contrary to the defendant's arguments at trial and on appeal, Massachusetts law permits recovery for emotional distress or psychological harm as a result of negligence where there is "enough objective evidence of harm to convince a judge that their claims present a sufficient likelihood of genuineness to go to trial." *Sullivan* v. *Boston Gas Co.*, 414 Mass. 129, 137-138 (1993). "Emotional distress is the natural and proximate result of knowing that the remains of a deceased family member have not been preserved as the family desired." *Kelly* v. *Brigham & Women's Hosp.*, 51 Mass. App. Ct. 297, 307 (2001), and authorities cited. See Prosser & Keaton, Torts § 54, at 362 (5th ed. 1984). In cases involving a deceased's remains, recovery for injury to feelings is permitted. *Kelly* v. *Brigham & Women's Hosp., supra.*

"Massachusetts has long recognized that survivors may experience compensable mental distress when the corpse of a loved one is subjected to an unwanted autopsy." *Id.* at 301. See *Burney* v. *Children's Hosp.*, 169 Mass. 57, 59-60 (1897) (burial of the dead is a subject that interests the feelings of mankind to a much greater degree than many matters of actual property). See also *Meagher* v. *Driscoll*, 99 Mass. 281, 284-285 (1868) (in measuring damages in cases involving unlawful removal of a body, the jury may consider the injury to the plaintiff's feelings). Although this is not a case involving "wrongful autopsy" or disinterment, the negligence claim concerning the disposition of the remains is categorically close. See Restatement (Second) of Torts § 868 comment a (1979) ("no need to show physical consequences of the mental distress" in claims of negligent mistreatment or interference with a dead body).

It was not unreasonable for the plaintiffs to conclude that something was amiss when they discovered the mislabeling of their mother's ashes, and without any explanation at hand, they reasonably could conclude that they had received the wrong (or mixed) ashes. Even if the chain of custody between the body of Greta and the ashes received was unbroken, and Bayview's only negligence was mislabeling, that would not affect a deter-

mination of the initial emotional distress of the plaintiffs but might be a consideration in the amount of compensation awarded.

There was nothing in the law preventing the jury from finding that the sisters suffered injury due to mental distress occasioned by the defendant's handling of their mother's remains and the accompanying paperwork. The verdicts were neither inconsistent nor against the weight of the evidence.

*Judgment affirmed.*