2016 IL App (4th) 150791

NO. 4-15-0791

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| DONNA COCHRAN, | ) | Appeal from |
|     Plaintiff-Appellant, | ) | Circuit Court of |
|     v. | ) | Sangamon County |
| SECURITAS SECURITY SERVICES USA, INC., | ) | No. 12L245 |
|     Defendant-Appellee. | ) | |
| | ) | Honorable |
| | ) | Peter C. Cavanagh, |
| | ) | Judge Presiding. |

_____

JUSTICE HARRIS delivered the judgment of the court, with opinion.
Justices Holder White and Appleton concurred in the judgment and opinion.

**OPINION**

¶ 1   Plaintiff, Donna Cochran, brought a cause of action against defendant, Securitas Security Services USA, Inc., alleging interference with her right to possession of the remains of her deceased son, Walter Andrew Cochran (decedent). The trial court granted defendant's motion to dismiss plaintiff's complaint, and she appeals. We reverse and remand for further proceedings.

¶ 2           I. BACKGROUND

¶ 3   The following facts are undisputed. In September 2010, the decedent, then age 39, died at his home in Moultrie County, Illinois. On September 14, 2010, his body was transported to the Moultrie County morgue and then to Memorial Medical Center (Memorial) in Springfield,

Illinois, for an autopsy. On September 16, 2010, representatives of Butler Funeral Home (Butler) arrived at Memorial's morgue to obtain the remains of an individual named William Carroll. However, rather than obtaining Carroll's remains, Butler was mistakenly provided with decedent's remains. Decedent's body was then cremated by Butler.

¶ 4 In September 2013, plaintiff, individually and as the independent administrator of decedent's estate, filed a complaint against Memorial, Butler, and defendant—an entity that contracted with Memorial to provide certain security services to the hospital. Plaintiff raised various claims related to the wrongful cremation of decedent, including an "interference with right to possession of decedent" claim against defendant. In June 2015, plaintiff settled her claims with Memorial and Butler.

¶ 5 Also in June 2015, plaintiff filed a third amended complaint against defendant only. Again, she alleged defendant wrongfully interfered with her right to possession of the decedent's remains. Plaintiff alleged she was decedent's mother and next of kin, and she had the right to possession of her son's body to make an appropriate disposition "by burial or otherwise." She asserted defendant "had a duty not to interfere" with her right to possession of her son's body but violated that duty by failing to follow Memorial's rules and policies regarding the care and handling of deceased individuals.

¶ 6 Specifically, plaintiff alleged defendant's employees "were responsible for receiving, tracking, and releasing bodies processed by [Memorial's] morgue" and had to "conform their conduct with written documents, entitled 'Security Policies.' " She identified the relevant policies as follows:

"12. At all relevant times, Security Policies #1014 and #1014-2, titled

'Receiving/Releasing Deceased Persons' were in effect and required that 'The Security officer must also make sure that an identification tag is left visible with/on the body.'

* * *

19. At all relevant times, Paragraph 5 of Security Policy #1014-2 state[d] that 'A Coroner's Case cannot be released to a funeral home until verbal confirmation to do so has been received from the Memorial Pathologists and the Coroner's office.'

***

21. At all relevant times, Paragraph 5 of Security Policy #1014 state[d] that 'Upon release of a deceased person to a funeral home a Security officer must be present, or must verify the deceased person with the funeral home and with the Nursing Service Print-out before removal from Memorial can take place. Also, before removal the Nursing Service Print-out must be signed by both the Security officer and the funeral home representative. The time and date of pick-up must also be recorded.' "

Plaintiff also alleged defendant's employees "were responsible for maintaining a log book identifying the bodies in the morgue and their location."

¶ 7    According to plaintiff, defendant's employees received decedent's body from the Moultrie County Coroner's office on September 14, 2010, and placed his body in Memorial's morgue. She alleged defendant's employees "did not place an identification tag on [decedent's] body to ensure that a tag was left visible with/on the body when it was received at [Memorial]."

- 3 -

Decedent's body was then placed within a Ziegler case, a case used for severely decomposed bodies. Plaintiff alleged defendant's employees failed to place an identification tag on either the Ziegler case containing decedent's body or on the body of decedent. Additionally, she asserted defendant's employees "did not accurately record the location of [decedent's] body in the morgue log book and instead recorded that the body of decedent William Carroll was located in the Ziegler case."

¶ 8    Plaintiff also alleged that on September 16, 2010, defendant's employee's mistakenly transferred possession of decedent's body to Butler and told Butler's representatives that the body transferred was that of William Carroll. She asserted defendant's employees (1) did not have verbal confirmation to release decedent's body to a funeral home; (2) did not verify the identity of the deceased person with Butler or on the "Nursing Service Print-out," sign the "Nursing Service Print-out," or obtain the signature of a Butler representative on the "Nursing Service Print-out"; (3) relied on an erroneous morgue log book entry to determine the identity of the body in the Ziegler case and did not confirm the identity by checking for an identification tag on the body prior to releasing the body to Butler; and (4) did not attempt to make a visual identification of the body in the Ziegler case to ensure that it matched the description of William Carroll.

¶ 9    Plaintiff alleged defendant breached its duty not to interfere with her possession of decedent's body through the following acts or omissions:

> "a. Failed to conform with the provisions of written security policies established by Memorial *** designed to prevent misidentification of bodies in its morgue;
>
> b. Failed to keep an accurate morgue log book that correctly stated the lo-

cation and identity of bodies in the Memorial *** morgue;

c. Violated both hospital policy and industry standards by releasing the incorrect body to representatives of a funeral home.

d. Violated both hospital policy and industry standards by releasing a body that lacked an identification tag to a funeral home;

e. Released a body to representatives of a funeral home when it knew or should have known the body in its possession did not match the description of the body to be transported;

f. Relied entirely on an erroneous log book entry to confirm the identity of a body in the morgue in contradiction with security policies and industry standards.

g. Was otherwise careless and/or reckless in its care and handling of [d]ecedent ***."

Additionally, plaintiff asserted that as a proximate result of defendant's "wrongful acts and/or omissions" she experienced severe emotional distress and mental suffering, suffered embarrassment and humiliation, and suffered financial loss.

¶ 10 In July 2015, defendant filed a combined motion to dismiss plaintiff's third amended complaint pursuant to section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2014)), seeking dismissal of the complaint pursuant to both section 2-615 and section 2-619 of the Code (735 ILCS 5/2-615, 2-619 (West 2014)). It argued dismissal was warranted under section 2-615 because plaintiff (1) failed to allege sufficient facts to show a duty owed by defendant; (2) was required, but failed, to plead sufficient facts to demonstrate willful

and wanton conduct by defendant; (3) failed to plead sufficient facts to show that defendant's conduct was a proximate cause of her claimed damages; and (4) failed to plead sufficient facts to support a claim for emotional damages.

¶ 11 Defendant argued dismissal of plaintiff's third amended complaint was warranted under section 2-619 because plaintiff "ignore[d] both the facts known to her and her counsel at the time of the filing of her pleading in violation of Illinois Supreme Court Rule 137 [(eff. July 1, 2013)] and the pleading requirements of a cause of action for interference with the right to possession of the body of a decedent under Illinois law." It maintained that, as a result, plaintiff "failed to plead a cause of action for interference with the right to possess the body of the [d]ecedent" and "[t]he facts plead [*sic*] and the facts known to *** [p]laintiff at the time of pleading demonstrate that *** [p]laintiff cannot successfully plead a cause of action against [defendant] for interference with the right to possess the body of the decedent."

¶ 12 In September 2015, the trial court granted defendant's motion to dismiss on the basis that plaintiff failed to, and could not, allege sufficient facts to establish a duty owed by defendant to plaintiff. The court's order stated as follows:

> "The Defendant's Motion to Dismiss pursuant to [section 2-615 of the Code (735 ILCS 5/2-615 (West 2014))] is hereby granted with prejudice, this court having found that the Plaintiff has failed to plead sufficient facts to support the allegation of a duty allegedly owed by the Defendant *** to the Plaintiff ***.
>
> The Defendant's Motion to Dismiss pursuant to [section 2-619 of the Code (735 ILCS 5/2-619 (West 2014))] is also hereby granted with prejudice, this court having found that there *** is no set of facts by which the Plaintiff may

demonstrate a duty owed on the part of the Defendant *** to the Plaintiff ***."

¶ 13    This appeal followed.


¶ 14                        II. ANALYSIS

¶ 15                    A. Motions To Dismiss

¶ 16    On appeal, plaintiff argues the trial court erred in granting defendant's motion to dismiss her third amended complaint. As stated, defendant's motion was filed pursuant to section 2-619.1 of the Code (735 ILCS 5/2-619.1 (West 2014)), which allowed it to seek dismissal of plaintiff's complaint under both section 2-615 and section 2-619 of the Code (735 ILCS 5/2-615, 2-619 (West 2014)).

¶ 17    "A section 2-615 motion to dismiss [citation] challenges the legal sufficiency of a complaint based on defects apparent on its face." *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429, 856 N.E.2d 1048, 1053 (2006). On review, we consider "whether the allegations of the complaint, construed in the light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief can be granted." *Henderson Square Condominium Ass'n v. LAB Town-homes, LLC*, 2015 IL 118139, ¶ 61, 46 N.E.3d 706. Further, we must take as true all well-pleaded facts and all reasonable inferences that may be drawn from those facts. *Iseberg v. Gross*, 227 Ill. 2d 78, 86, 879 N.E.2d 278, 284 (2007). "While the plaintiff is not required to set forth evidence in the complaint [citation], the plaintiff must allege facts sufficient to bring a claim within a legally recognized cause of action [citation], not simply conclusions [citation]." *Marshall*, 222 Ill. 2d at 429-30, 856 N.E.2d at 1053. "A complaint should be dismissed under section 2-615 only if it is clearly apparent from the pleadings that no set of facts can be proven that

would entitle the plaintiff to recover." *In re Estate of Powell*, 2014 IL 115997, ¶ 12, 12 N.E.3d 14.

¶ 18        "A section 2-619 motion to dismiss admits the legal sufficiency of the complaint but asserts an affirmative defense or other matter defeating the plaintiff's claim." *Skaperdas v. Country Casualty Insurance Co.*, 2015 IL 117021, ¶ 14, 28 N.E.3d 747. "Section 2-619(a)'s purpose is to provide litigants with a method of disposing of issues of law and easily proved issues of fact relating to the affirmative matter early in the litigation." *Hascall v. Williams*, 2013 IL App (4th) 121131, ¶ 16, 996 N.E.2d 1168. The supreme court has defined the term "affirmative matter" as follows:

> " '[A] type of defense that either negates an alleged cause of action completely or refutes crucial conclusions of law or conclusion of material fact unsupported by allegations of specific fact contained [in] or inferred from the complaint *** [not] merely evidence upon which defendant expects to contest an ultimate fact stated in the complaint.' " *Smith v. Waukegan Park District*, 231 Ill. 2d 111, 121, 896 N.E.2d 232, 238 (2008) (quoting 4 Richard A. Michael, Illinois Practice § 41.7, at 332 (1989)).

¶ 19        When ruling on a section 2-619 motion, "a court must interpret the pleadings and supporting documents in the light most favorable to the nonmoving party." *Henderson*, 2015 IL 118139, ¶ 34, 46 N.E.3d 706. "The motion should be granted only if the plaintiff can prove no set of facts that would support a cause of action." *In re Estate of Boyar*, 2013 IL 113655, ¶ 27, 986 N.E.2d 1170.

¶ 20        Further, a dismissal pursuant to either section 2-615 or section 2-619 is subject to

*de novo* review. *Lutkauskas v. Ricker*, 2015 IL 117090, ¶ 29, 28 N.E.3d 727. On review, "this court may affirm the trial court's judgment on any basis that is supported by the record." *Stoll v. United Way of Champaign County, Illinois, Inc.*, 378 Ill. App. 3d 1048, 1051, 883 N.E.2d 575, 578 (2008).

¶ 21                              B. Defendant's Attachments

¶ 22            As a preliminary matter, plaintiff raises an issue with respect to the attachments to defendant's motion to dismiss. She argues that, under section 2-619, defendant was required, but failed, to support its motion with affidavits. Plaintiff also contends that the documents defendant did attach to its motion were not properly before the trial court. As defendant points out, plaintiff forfeited this issue by failing to raise it with the trial court. *Kostopoulos v. Poladian*, 257 Ill. App. 3d 95, 97, 628 N.E.2d 628, 630 (1993) (stating "a challenge for failure to support a motion to dismiss with affidavits as required by section 2-619 will be deemed waived where the issue is not raised below"). Nevertheless, despite this forfeiture, we will address plaintiff's contention in the interest of maintaining a uniform body of precedent. *Ballinger v. City of Danville*, 2012 IL App (4th) 110637, ¶ 13, 966 N.E.2d 594 (noting "the forfeiture rule is an admonition to the parties and does not affect this court's jurisdiction").

¶ 23            Section 2-619(a) of the Code (735 ILCS 5/2-619(a) (West 2014)) provides that when the alleged grounds for dismissal "do not appear on the face of the pleading attacked the motion shall be supported by affidavit." (We note that Illinois Supreme Court Rule 212(a)(4) (eff. Jan. 1, 2011) allows for the use of a properly taken discovery deposition "for any purpose for which an affidavit may be used," and our discussion herein of affidavits and their use in rela-

tion to motions to dismiss applies equally to discovery depositions taken pursuant to the rules.) Additionally, Illinois Supreme Court Rule 191(a) (eff. Jan. 4, 2013) sets forth the requirements for affidavits submitted in connection with a section 2-619 motion to dismiss. It requires facts in the affidavit to be set forth with "particularity," and "sworn or certified copies of all documents upon which the affiant relies" must be attached to the affidavit. *Id.* "Strict compliance with Rule 191(a) is required to insure the trial court is presented with valid evidentiary facts on which to base a decision." *Clemons v. Nissan North America, Inc.*, 2013 IL App (4th) 120943, ¶ 36, 997 N.E.2d 307. Further, "[b]asic rules of evidence require a party to lay the proper foundation for the introduction of documentary evidence, including its authenticity." *Id.*

¶ 24 Here, defendant filed a motion to dismiss pursuant to section 2-619 without any accompanying affidavits. Where, as here, no affirmative matter warranting dismissal of plaintiff's action appeared on the face of her complaint, defendant was required to support its motion with affidavits. Instead, defendant attached to its motion to dismiss and its reply to plaintiff's response multiple documents, including a security services agreement, documents labeled "Security Policy #1014" and "Security Policy #1014-2," computer printouts with the heading "Memorial Health System Security," and forms with handwritten entries regarding decedent and other deceased individuals. None of the aforementioned documents were properly before the trial court. Given defendant's failure to attach any affidavits to its motion to dismiss, we must decline to consider these documents as, even if we were to find them relevant to the pleading issues, they lack the requisite indicia of authenticity.

- 10 -

¶ 25                                    C. Section 2-619 Dismissal

¶ 26        In this case, the trial court granted defendant's motion to dismiss under both sections 2-615 and 2-619. Plaintiff argues the court's dismissal under section 2-619 was "duplicative of [its] order pursuant to section 2-615." She points out that the court granted defendant's 2-619 motion on the basis that there was no set of facts by which she could demonstrate a duty owed by defendant and contends "that the consideration of whether [she] stated a claim upon which relief may be granted should be limited to the provisions set forth in [s]ection 2-615." We agree with plaintiff.

¶ 27        As discussed, a section 2-619 motion admits the legal sufficiency of a complaint and requires a defendant to assert some affirmative matter to defeat a plaintiff's claim. Here, not only did defendant's section 2-619 motion improperly challenge the sufficiency of plaintiff's pleadings, the record reflects it failed to identify any affirmative matter that would defeat plaintiff's claim. In its motion, defendant failed to designate the section 2-619 subsection under which it sought dismissal of plaintiff's complaint. Also, aside from improperly challenging the legal sufficiency of plaintiff's third amended complaint, defendant essentially argued that the underlying *facts* were *insufficient* to support plaintiff's cause of action. Such is not an appropriate basis for dismissal under section 2-619. See *Reynolds v. Jimmy John's Enterprises, LLC*, 2013 IL App (4th) 120139, ¶ 34, 988 N.E.2d 984 ("Where a defendant seeks to address the complaint's factual allegations, a summary judgment motion *** is the proper vehicle."). The trial court's order similarly failed to identify an affirmative matter that defeated plaintiff's claim. Given these circumstances, we find the court erred in dismissing plaintiff's third amended complaint pursuant to section 2-619.

¶ 28                    D. Section 2-615 Dismissal

¶ 29            *1. Plaintiff's Cause of Action and the Requisite Degree of Care*

¶ 30        Next, we address the trial court's dismissal of plaintiff's complaint pursuant to section 2-615 of the Code. Plaintiff contends the trial court erred in finding that she failed to allege sufficient facts to establish a duty owed by defendant. She maintains Illinois law recognizes a right to possession of a decedent's remains by his or her nearest living relatives for burial purposes and, as a result, "a general duty is placed on all individuals not to interfere with this right."

¶ 31        In response, defendant asserts the duty pertaining to a claim arising out of the right to possession of a decedent's remains is the duty to refrain from any willful and wanton interference with that right. Thus, it maintains plaintiff was required to plead more than ordinary negligence and, instead, allege specific facts demonstrating that it acted willfully and wantonly. Defendant argues plaintiff's third amended complaint failed to set forth such facts and, as a result, was insufficient to state a cause of action and correctly dismissed by the trial court.

¶ 32        "No separate and independent tort of willful and wanton conduct exists in Illinois," and, "[i]nstead, it is viewed as an aggravated form of negligence." *Brooks v. McLean County Unit District No. 5*, 2014 IL App (4th) 130503, ¶ 20, 8 N.E.3d 1203. Thus, in addition to alleging facts establishing willful and wanton conduct, a plaintiff must also "plead and prove the basic elements of a negligence claim, *i.e.*, (1) defendant owed a duty to the plaintiff, (2) defendant breached the duty, and (3) the breach was the proximate cause of the plaintiff's injury." *Id.*

¶ 33        A plaintiff's failure to set forth factual allegations of willful and wanton conduct when required to do so is fatal to his or her complaint. Although, as plaintiff points out, the rec-

ord fails to reflect that the trial court addressed the requirement of willful and wanton conduct when granting defendant's motion to dismiss, as stated, this court may affirm the trial court's dismissal of plaintiff's third amended complaint on any basis supported by the record. *Stoll*, 378 Ill. App. 3d at 1051, 883 N.E.2d at 578. Therefore, we consider defendant's argument that plaintiff was required, but failed, to plead willful and wanton conduct by defendant in connection with her claim for interference with the right to possession of a decedent's remains.

¶ 34        In responding to defendant's argument on appeal, plaintiff contends she was not required to plead willful and wanton conduct and, instead, could base her cause of action on alleged negligent conduct by defendant. She asserts that in the context of a violation of her right to possession of her son's body "the willful and wanton standard is a legal anachronism that is no longer consistent with the current state of the law." Alternatively, she maintains the factual allegations in her third amended complaint were sufficient to establish willful and wanton conduct by defendant. We agree with plaintiff's initial contention.

¶ 35                    a. Early Common-Law Recognition of the Tort of Interference
                  With the Next of Kin's Right to Possession of a Decedent's Remains

¶ 36        Illinois common law recognizes a right by a decedent's next of kin to possession of the decedent's body "to make appropriate disposition thereof, whether by burial or otherwise." *Leno v. St. Joseph Hospital*, 55 Ill. 2d 114, 117, 302 N.E.2d 58, 59-60 (1973). Interference with this right is " 'an actionable wrong' " and the plaintiff in such a case is entitled to recover damages for mental suffering that is proximately caused by the defendant's conduct. *Mensinger v. O'Hara*, 189 Ill. App. 48, 55 (1914) (quoting *Larson v. Chase*, 50 N.W. 238, 239 (Minn. 1891)). "That mental suffering and injury to the feelings would be ordinarily the natural and proximate

- 13 -

result of knowledge that the remains of a deceased [relative] had been mutilated is too plain to admit of argument." *Larson*, 50 N.W. at 240. In fact, "[w]ithout the element of mental distress, the action would be impotent of results and of no significance or value as a remedy for the tortious violation of the legal right of possession and preservation." *Beaulieu v. Great Northern Ry. Co.*, 114 N.W. 353, 355 (Minn. 1907). This cause of action has its roots in the early recognition of a quasi-property right in a decedent's body by his next of kin. *Mensinger*, 189 Ill. App. at 53-54; but see Prosser and Keeton on the Law of Torts § 12, at 63 (W. Page Keeton et al. eds., 5th ed. 1984) ("It seems reasonably obvious that such 'property' is something evolved out of thin air to meet the occasion, and that in reality the personal feelings of the survivors are being protected, under a fiction likely to deceive no one but a lawyer.").

¶ 37 Illinois cases addressing claims arising out of the right to possession of a decedent's remains have routinely stated that, to successfully state a cause of action, a plaintiff must demonstrate by specific facts that the defendant's interference was willful and wanton. See *Drakeford v. University of Chicago Hospitals*, 2013 IL App (1st) 111366, ¶ 14, 994 N.E.2d 119; *Rekosh v. Parks*, 316 Ill. App. 3d 58, 68, 735 N.E.2d 765, 774 (2000); *Kelso v. Watson*, 204 Ill. App. 3d 727, 731, 562 N.E.2d 975, 978 (1990); *Hearon v. City of Chicago*, 157 Ill. App. 3d 633, 637, 510 N.E.2d 1192, 1195 (1987); *Courtney v. St. Joseph Hospital*, 149 Ill. App. 3d 397, 398, 500 N.E.2d 703, 704 (1986). Each of the cases stating this proposition refers either directly or indirectly to *Mensinger*, 189 Ill. App. 48—a First District case decided in 1914—which defendant contends bars plaintiff from maintaining a cause of action for interference with the right to possession of the decedent's remains based upon an act of ordinary negligence.

¶ 38 In *Mensinger*, the plaintiff brought an action against undertakers who were

charged with preparing his deceased wife's remains for burial. *Id.* at 49. He alleged the defend-ants had " 'wrongfully and unlawfully' " removed his wife's hair, rendering her body " 'unfit to be viewed by the plaintiff and his relatives and friends,' " and, as a result, he " 'suffered greatly, both in mind and in body.' " *Id.* at 49-50. The circuit court dismissed the plaintiff's complaint, and he appealed. *Id.* at 49. In reversing the circuit court, the First District held as follows:

> "The decided weight of authority in this country supports the proposition that while a dead body is not considered as property, in the ordinary, technical sense in which that word is usually employed, yet the law does recognize a right, some-what akin, perhaps, to a property right, arising out of the duty of the nearest rela-tives of the deceased to bury their dead, which authorizes and requires them to take possession and control of the dead body for the purpose of giving it a decent burial." *Id.* at 53-54.

¶ 39 Examining similar cases from other jurisdictions, the First District in *Mensinger* also found that "[t]he greater weight of authority" permitted a cause of action for solely mental suffering based on "any wilful or wanton infringement" of that legal right. *Id.* at 54. It noted that, in several of the cases it relied upon, "doubt [was] expressed as to whether a recovery may be had for mental suffering, alone, in the absence of any allegation or proof of wilful or wanton misconduct," *i.e.*, when only ordinary negligence is alleged. *Id.* at 54-55.

¶ 40                     b. Development of the Separate Tort of
                    Negligent Infliction of Emotional Distress

¶ 41 At the time *Mensinger* was decided and for many years thereafter, the general rule in Illinois was "that there can be no recovery for negligent infliction of mental distress in the ab-

sence of some contemporaneous physical impact." *Carlinville National Bank v. Rhoads*, 63 Ill. App. 3d 502, 503, 380 N.E.2d 63, 65 (1978) (citing *Braun v. Craven*, 175 Ill. 401, 420, 51 N.E. 657, 664 (1898)). The physical impact limitation was a product of a general reluctance by courts "to allow recovery for purely mental or emotional distress" due to concerns "that the door would be opened for fraudulent claims, that damages would be difficult to ascertain and measure, that emotional injuries are hardly foreseeable and that frivolous litigation would be encouraged." *Rickey v. Chicago Transit Authority*, 98 Ill. 2d 546, 555, 457 N.E.2d 1, 5 (1983).

¶ 42　　　　However, the legal landscape has slowly changed, and the law in this state relating to negligent infliction of emotional distress claims has enlarged rather than restricted the circumstances amenable to the filing of such a claim. In 1983, the supreme court issued its decision in *Rickey*, which found a bystander could recover for negligent infliction of emotional distress if he was in the "zone of physical danger" and reasonably feared for his own safety, even in the absence of a contemporaneous physical impact. *Id.* The court noted as follows: "The impact rule was at one time followed in the majority of jurisdictions. Today it is clear that most jurisdictions no longer require contemporaneous physical impact or injury for a cause of action for emotional distress." *Id.* at 553, 457 N.E.2d at 4. However, the court in *Rickey* stated a bystander must still "show physical injury or illness as a result of the emotional distress caused by the defendant's negligence." *Id.* at 555, 457 N.E.2d at 5.

¶ 43　　　　Several years later, in *Corgan v. Muehling*, 143 Ill. 2d 296, 304, 574 N.E.2d 602, 605 (1991), the supreme court addressed the *Rickey* "zone-of-physical-danger rule" and pleading requirements in a case involving a direct victim's negligence claim. In that case, the plaintiff brought an action for negligent infliction of emotional distress against her psychologist, alleging

- 16 -

he engaged in sexual relations with her during her treatment. *Id.* at 300, 574 N.E.2d at 603-04. In finding *Rickey* did not apply to the claim before it, the court noted it had "yet to determine the pleading requirements for a plaintiff who has directly suffered emotional distress due to a [defendant's] negligence." *Id.* at 306, 574 N.E.2d at 606.

¶ 44   The supreme court found that the plaintiff was not required to allege physical symptoms of her emotional distress. *Id.* at 312, 574 N.E.2d at 609. It relied on its previous holding in *Knierim v. Izzo*, 22 Ill. 2d 73, 174 N.E.2d 157 (1961), an intentional infliction of emotional distress case in which it held "a plaintiff need not allege physical injury to recover." *Corgan*, 143 Ill. 2d at 311, 574 N.E.2d at 609. The court noted that particular holding was based on the following rationale:

> " 'The stronger emotions when sufficiently aroused do produce symptoms that are visible to the professional eye and we can expect much more help from the men of science in the future. [Citation.] In addition, jurors from their own experience will be able to determine whether *** conduct results in severe emotional disturbance.' " *Id.* at 311-12, 574 N.E.2d at 609 (quoting *Knierim*, 22 Ill. 2d at 85, 174 N.E.2d at 164).

The court reasoned that in the 30 years since *Knierim*, it had "not lost its faith in the ability of jurors to fairly determine what is, and is not, emotional distress" and additionally noted that "the women and men of the mental health care field ha[d] made significant improvements in the diagnosis, description and treatment of emotional distress." *Id.* at 312, 574 N.E.2d at 609.

¶ 45   Thus, pursuant to *Corgan*, a plaintiff who is a direct victim of a defendant's negligence may bring a cause of action for negligent infliction of emotional distress without the add-

ed requirement of demonstrating a physical injury or impact. See *Pasquale v. Speed Products Engineering*, 166 Ill. 2d 337, 346, 654 N.E.2d 1365, 1371 (1995) (stating *Corgan* "eliminated the contemporaneous injury or impact requirement for a direct victim's recovery for emotional distress on a theory of negligence").

¶ 46          c. Evolution of the Tort of Interference With the
                  Next of Kin's Right to Possession of a Decedent's Remains

¶ 47          The law concerning the specific tort at issue here–interference with the next of kin's right to possession of a decedent's remains–has similarly evolved in the years since *Mensinger*. The authors of the 1984 edition of Prosser and Keeton on the Law of Torts (Prosser and Keeton the Law of Torts § 54, at 361-62 (W. Page Keeton et al. eds., 5th ed. 1984)) addressed claims of mental distress caused by a defendant's negligence, stating as follows:

> "Where the defendant's negligence causes only mental disturbance, without accompanying physical injury, illness or other physical consequences, and in the absence of some other independent basis for tort liability, the great majority of courts still hold that in the ordinary case there can be no recovery. ***
>
> In two special groups of cases, however, there has been some movement to break away from the settled rule and allow recovery for mental disturbance alone. *** [One] group of cases has involved the negligent mishandling of corpses. Here the traditional rule has denied recovery for mere negligence, without circumstances of aggravation. There are by now, however, a series of cases allowing recovery for negligent embalming, negligent shipment, running over the body, and the like, without such circumstances of aggravation. What all of these cases

- 18 -

appear to have in common is an especial likelihood of genuine and serious mental distress, arising from the special circumstances, which serves as a guarantee that the claim is not spurious. *** Where the guarantee can be found, and the mental distress is undoubtedly real and serious, there may be no good reason to deny recovery."

¶ 48 The evolution of this cause of action is further reflected in the Restatement of Torts. A claim based on the interference with the next of kin's right to possession of a decedent's remains was initially recognized in section 868 of the first Restatement of Torts, which provided: "A person who wantonly mistreats the body of a dead person or who without privilege intentionally removes, withholds or operates upon the dead body is liable to the member of the family of such person who is entitled to the disposition of the body." Restatement of Torts § 868 (1939). The comments to that section reflect that the first Restatement precluded a cause of action based on ordinary negligence:

"A member of the family [citation] of a deceased person who is entitled to the disposition of the body has an action of tort against one who wantonly maltreats or improperly deals with the body of such person. This right exists although there has been no harm except such harm to the feelings as is inseparable from the knowledge of the defendant's conduct. The right to maintain an action for intentional interference with the body exists although there was no intent to do a tortious act, as where a body is misdelivered by the railroad or where a surgeon performs an autopsy mistakenly believing that he is privileged to do so. On the other hand, *there is no right to maintain an action for mere negligence in dealing with*

- 19 -

*the body*. For unintentional harms to the body there is liability only if wantonly caused." (Emphasis added.) Restatement of Torts § 868 cmt. a (1939).

¶ 49 Section 868, however, was expanded in the second Restatement, which states as follows:

"One who intentionally, recklessly or *negligently* removes, withholds, mutilates or operates upon the body of a dead person or *prevents its proper interment or cremation* is subject to liability to a member of the family of the deceased who is entitled to the disposition of the body." (Emphases added.) Restatement (Second) of Torts § 868 (1979).

Comment d to that section provides:

"The rule stated in [section 868] applies not only to an intentional interference with the body itself or with its proper burial or cremation, but also to an interference that is reckless or merely negligent. Thus an undertaker who negligently embalms the body, a carrier that negligently transports it or an automobile driver who negligently collides with the hearse and dumps the corpse out into the highway will be subject to liability, if the result is harm to the body or prevention of its proper burial or cremation." Restatement (Second) of Torts § 868 cmt. d (1979).

¶ 50 Generally, a Restatement provides guidance to a court but does not become binding authority unless specifically adopted by our supreme court. *In re Estate of Lieberman*, 391 Ill. App. 3d 882, 890, 909 N.E.2d 915, 922 (2009); see also *Tilschner v. Spangler*, 409 Ill. App. 3d 988, 990, 949 N.E.2d 688, 691 (2011). Here, section 868 of the Restatement (Second) of

- 20 -

Torts has not been adopted by the supreme court. Nevertheless, it provides persuasive authority for the position asserted by plaintiff—that she may maintain an action based on allegations of negligent interference with her right to possession of her son's body without circumstances of aggravation.

¶ 51 Additionally, we note many other states now permit recovery in cases involving the alleged negligent mishandling of a decedent's body without circumstances of aggravation. See *Hovis v. City of Burns*, 415 P.2d 29, 31 (Or. 1966) (*en banc*) (finding an action for mental suffering from an unauthorized infringement of the right to have a decedent's remains undisturbed exists and does not require circumstances of aggravation); *Golston v. Lincoln Cemetery, Inc.*, 573 S.W.2d 700, 704 (Mo. Ct. App. 1978) (Missouri court noting the trend of modern authority was not to apply the physical injury restriction when negligent interference with rights involving dead human bodies is claimed); *Allen v. Jones*, 163 Cal. Rptr. 445, 450 (Ct. App. 1980) (concluding "damages are recoverable for mental distress without physical injury for negligent mishandling of a corpse by a mortuary"); *Whitehair v. Highland Memory Gardens, Inc.*, 327 S.E.2d 438, 443 (W. Va. 1985) ("A cause of action for negligent or intentional mishandling of a dead body does not require a showing of physical injury or pecuniary loss."); *Carney v. Knollwood Cemetery Ass'n*, 514 N.E.2d 430, 433 (Ohio Ct. App. 1986) (recognizing a cause of action for negligent interference with a dead body without an accompanying physical injury); *Tomasits v. Cochise Memory Gardens, Inc.*, 721 P.2d 1166, 1167 (Ariz. Ct. App. 1986) (electing to follow section 868 of the Restatement (Second) of Torts); *Strachan v. John F. Kennedy Memorial Hospital*, 538 A.2d 346, 353 (N.J. 1988) (finding the plaintiffs did not have to prove physical injury to recover for emotional distress due to the "the long-recognized exception for

negligent handling of a corpse" cases); *Wilson v. Ferguson*, 747 S.W.2d 499, 503 (Tex. App. 1988) (Texas court stating that "in cases resulting from the mishandling of a corpse, proof of a physical injury or manifestation is not required"); *Quesada v. Oak Hill Improvement Co.*, 261 Cal. Rptr. 769, 777 (1989) (finding close family members of a decedent could recover for the negligent handling of a corpse); *Brown v. Matthews Mortuary, Inc.*, 801 P.2d 37, 44 (Idaho 1990) (holding "that an exception to the general rule involving damages for mental distress \*\*\* exists in Idaho for cases involving mishandling of decedents' bodies and remains" and "[a] plaintiff entitled to recover need not manifest any accompanying physical injuries in order to recover for emotional distress in this particular type of case"); *Moresi v. State of Louisiana ex rel. Department of Wildlife & Fisheries*, 567 So. 2d 1081, 1095-96 (La. 1990) (stating Louisiana has permitted deviations from the general rule against emotional damages for merely negligent conduct in cases involving the mishandling of a corpse); *Contreraz v. Michelotti-Sawyers*, 896 P.2d 1118, 1120-21 (Mont. 1995) (recognizing the right to damages for negligent infliction of emotional distress resulting from the mishandling of a corpse where serious or severe emotional distress to the plaintiff was the reasonably foreseeable consequence of the defendant's negligent act or omission); *Lauer v. City of New York*, 733 N.E.2d 184, 197 (N.Y. 2000) (recognizing that claims involving the negligent mishandling of a corpse are an exception to the rule that requires physical manifestations of negligently caused psychological trauma); *Guth v. Freeland*, 28 P.3d 982, 988 (Haw. 2001) (holding plaintiffs who have not suffered physical injury may recover damages for emotional distress that arises from the negligent mishandling of a corpse); *Kelly v. Brigham & Women's Hospital*, 745 N.E.2d 969, 978 (Mass. App. Ct. 2001) (holding the plaintiff's allegation of emotional distress in a wrongful autopsy case "was sufficient to withstand the

motion for summary judgment, notwithstanding her limited evidence of accompanying physical harm and the absence of corroborative evidence"); *Blackwell v. Dykes Funeral Homes, Inc.*, 771 N.E.2d 692, 697 (Ind. Ct. App. 2002) (Indiana court holding the plaintiffs could proceed on a claim for negligent infliction of emotional distress based on allegations that the defendant lost their deceased loved one's remains, despite no physical impact); *Del Core v. Mohican Historic Housing Associates*, 81 837 A.2d 902, 905 (Conn. App. Ct. 2004) (recognizing "a claim for negligent interference with the right of a family member to control the proper burial of a deceased"); *Crawford v. J. Avery Bryan Funeral Home, Inc.*, 253 S.W.3d 149, 159-60 (Tenn. Ct. App. 2007) (stating that, "in Tennessee, any tort claims for negligent, reckless or intentional interference with a dead body and the like can be brought only by the person or persons who have the right to control disposition of the body"); *Vasquez v. State*, 206 P.3d 753, 765 n.10 (Ariz. Ct. App. 2008) (noting the requirement of bodily injury did not apply to the plaintiff's claim for wrongful handling of a dead body under section 868 of the Restatement (Second) of Torts); *Boorman v. Nevada Memorial Cremation Society, Inc.*, 236 P.3d 4, 8 (Nev. 2010) (stating a plaintiff alleging emotional distress from the negligent mishandling of a decedent's remains does "not need to observe or perceive the negligent conduct, or demonstrate any physical manifestation of emotional distress"); *Brown v. Bayview Crematory, LLC*, 945 N.E.2d 990, 994 (Mass. App. Ct. 2011) (holding "Massachusetts law permits recovery for emotional distress or psychological harm as a result of negligence where there is 'enough objective evidence of harm to convince a judge that their claims present a sufficient likelihood of genuineness to go to trial' "); *Keaton v. G.C. Williams Funeral Home, Inc.*, 436 S.W.3d 538, 543 (Ky. Ct. App. 2013) (noting the Kentucky supreme court abandoned the "impact rule" and cases involving the wrongful mishandling of a corpse

"should be analyzed and decided under general negligence principles").

¶ 52     We find that, although courts have traditionally been reluctant to allow negligence actions where only emotional damages are claimed, the more modern view supports the position taken by plaintiff in the instant case and recognizes an ordinary negligence cause of action arising out of the next of kin's right to possession of a decedent's remains. As noted, there are several Illinois appellate court cases that set forth willful and wanton conduct as a required element of such a claim (*Drakeford*, *Rekosh*, *Kelso*, *Hearon*, and *Courtney*); however, each of those cases relies either directly or indirectly on *Mensinger* when stating that proposition. Thus, they do not take into account the evolution of the law in this area and fail to persuade us to accept defendant's argument that circumstances of aggravation are necessary.

¶ 53     In this case, plaintiff's request that we recognize a negligence cause of action is amply supported by the authorities cited above. The cases cited by defendant provide no logical basis for rejecting that request. Accordingly, we find a cause of action exists for negligent interference with the right to possession of a decedent's body by the next of kin, without circumstances of aggravation, *i.e.*, allegations establishing willful and wanton conduct by the defendant.

¶ 54                    d. Plaintiff's Allegations

¶ 55     In her third amended complaint, plaintiff alleged facts showing that defendant's employees were responsible for receiving bodies delivered to Memorial's morgue, ensuring a security tag was visible on bodies when they arrived and were released from the morgue, maintaining a log book to document each body's location, and releasing bodies to funeral homes. Plaintiff alleged defendant failed to follow hospital policy and ensure that decedent's body had

- 24 -

visible identification when received or released, or that its location was correctly identified in Memorial's morgue log book. She alleged that, as a result, defendant's employees misidentified decedent's body and mistakenly released it to Butler. Accepting the factual allegations of the third amended complaint as true, we find plaintiff sufficiently alleged negligent conduct by defendant.

¶ 56                                        *2. Proximate Cause*

¶ 57        Finally, on appeal, defendant also argues plaintiff failed to sufficiently plead proximate cause. "The term 'proximate cause' encompasses two distinct requirements: cause in fact and legal cause." *Young v. Bryco Arms*, 213 Ill. 2d 433, 446, 821 N.E.2d 1078, 1085 (2004). "The first requirement, cause in fact, is present 'when there is a reasonable certainty that a defendant's acts caused the injury or damage.' " *Id.* (quoting *Lee v. Chicago Transit Authority*, 152 Ill. 2d 432, 455, 605 N.E.2d 493, 502 (1992)). "[W]hen *** there are multiple factors that may have combined to cause the injury, we ask whether defendant's conduct was a material element and a substantial factor in bringing about the injury." *Id.* at 446, 821 N.E.2d at 1086.

¶ 58        "The second requirement, legal cause, is established only if the defendant's conduct is ' "so closely tied to the plaintiff's injury that he should be held legally responsible for it." ' [Citation.]" *Id.* "The proper inquiry regarding legal cause involves an assessment of foreseeability, in which we ask whether the injury is of a type that a reasonable person would see as a likely result of his conduct." *Id.* at 446-47, 821 N.E.2d at 1086. "Although proximate cause is generally a question of fact [citation], the lack of proximate cause may be determined by the court as a matter of law where the facts alleged do not sufficiently demonstrate both cause in fact

- 25 -

and legal cause." *Id.* at 447, 821 N.E.2d at 1086.

¶ 59    Again, in this case, plaintiff alleged defendant's employees were responsible for receiving, tracking, and releasing bodies at Memorial's morgue. She asserted defendant's employees had to follow security policies that required them to ensure that a security tag was visible on a body when it was received and released. Plaintiff further alleged defendant was required to maintain a log book showing a body's location in the morgue. According to plaintiff, defendant's employees received decedent's body, placed decedent's body in Memorial's morgue, and mistakenly released decedent's body to Butler. She alleged defendant's employees violated security policies by failing to ensure an identification tag was visible on decedent's body when it was received and released and they failed to accurately record the location of decedent's body in the morgue log book. Plaintiff asserted defendant's employees released the wrong body to Butler and she suffered damages that were a proximate result of defendant's actions.

¶ 60    Taking all well-pleaded facts and reasonable inferences to be drawn from those facts as true and viewing them in a light most favorable to plaintiff, we find plaintiff's complaint alleged sufficient facts to demonstrate proximate cause. First, her factual allegations were sufficient to show that defendant's failure to follow security policies played a substantial role in the release of decedent's body to Butler, as they indicated defendant's actions caused decedent's body to be misidentified. Second, under the facts alleged, it was foreseeable that the failure to follow security procedures regarding the handling of deceased individuals in Memorial's morgue could result in the misidentification of a decedent's remains and, in turn, the wrongful disposition of those remains and emotional harm to a decedent's next of kin.

¶ 61    In this case, we find plaintiff alleged sufficient facts in her third amended com-

plaint to state a cause of action against defendant for interference with her right to possession of her deceased son's remains. As a result, the trial court erred in granting defendant's motion to dismiss plaintiff's complaint pursuant to section 2-615 of the Code.

¶ 62                                III. CONCLUSION

¶ 63          For the reasons stated, we reverse the trial court's judgment and remand for further proceedings.

¶ 64          Reversed and remanded.